Norwich and N. York Transportation Co. *v.* Western Mass. Ins. Co.

You will give the whole evidence a careful consideration, apply to it the rules of law as I have laid them down, and return such a verdict as your judgment may dictate.

The jury returned a verdict for the plaintiff for ten thousand dollars damages.

———•◆•———

THE NORWICH AND NEW YORK TRANSPORTATION COMPANY *vs.* THE WESTERN MASSACHUSETTS INSURANCE COMPANY.

[United States Circuit Court, District of Connecticut, April Term, 1868.]

Where a loss happened under a policy of insurance and due notice thereof was given to the insurer, and the latter, after examination, denied all liability on the ground that the loss was not from a peril insured against and therefore not covered by the policy—held that such denial of liability and refusal to pay constituted a waiver of the stipulation in the policy requiring the insured to furnish formal proofs of loss.

Held also that such denial and refusal was equally a waiver of the stipulation allowing the insurer sixty days within which to pay the loss, and that suit could be brought on the policy at once.

Where a steamer, insured against loss by fire, received an injury by collision with another vessel, and in consequence thereof filled with water, whereby the fire was forced out of her boiler and burnt off her light upper works and liberated her light freight, thereby reducing her floating capacity so that she sunk in deep water, and the jury found that she would not have sunk but for the fire—held that the fire must be considered as the proximate cause of the loss occasioned by burning and sinking, and that the insurers were liable for the damages naturally and necessarily resulting from the fire; but not for the damages that were, or might have been, caused naturally and necessarily by the collision only.

Where the rule of measuring the loss was prescribed by the policy to be the cash value of the boat just before the fire, and the plaintiffs offered evidence to prove such cash value, deducting the amount of damage by the collision, including all its necessary consequences, and such evidence was excluded by the court on the defendants' objection—held that *the plaintiffs were properly allowed to prove the cost of repairs in restoring the boat to her* original condition, as the only mode left of proving the extent of their loss.

Held also that the cost of raising the wreck by the plaintiffs, not exceeding the value of the same when raised, was a proper item of such loss.

ASSUMPSIT on a policy of insurance. Verdict for the plaintiffs and motion for a new trial by defendants. The case is fully stated in the opinion.

*Scudder* of New York and *Pratt* of Norwich, in support of the motion.

*Hovey* and *Halsey* of Norwich, contra.

SHIPMAN, J. This is an action at law founded upon a policy of insurance against loss or damage by fire. The case was tried to the jury and resulted in a verdict for the plaintiffs, whereupon the defendants now move for a new trial on the ground of alleged misdirection of the court in the charge to the jury. As there are a number of other cases depending in this court upon similar policies growing out of the loss of the steamer in question, it will be well to make a full statement of this one now before us, and settle, so far as this court is concerned, the legal principles applicable to the main features of the controversy.

The policy is for $5,000, and was duly issued by the defendants and in force at the time the loss occurred. The subject insured was the steamer City of Norwich, owned by the plaintiffs and running between Norwich, Connecticut, and the city of New York, through Long Island Sound. On the morning of the 18th of April, 1866, while on her regular trip to New York, she met with a serious disaster, out of which the claim for indemnity set up in the present suit arose. The circumstances under which the loss occurred, as they appeared in the evidence submitted to the jury, and the legal questions raised upon the trial and on this motion, can be well stated here by adopting the language of the motion now before us.

After proof of ownership, the plaintiffs offered evidence tending to prove, and claimed that they had proved, that on the trip already named the steamer " came in collision with a schooner ; that the stem of the latter cut her down below the water

line on her port side, forward of her boilers, making a large breach in her ; that through this breach she commenced taking in water, and was rapidly filling ; that in ten or fifteen minutes after she was struck a fire broke out on board, caused, as there was evidence tending to prove, by the water which flowed into the breach made by the collision rising to the furnace and blowing the fire out on the surrounding wood-work, which made rapid progress and soon enveloped her upper works in flames; and that, in half or three-quarters of an hour after, she sunk in twenty fathoms of water, going down bow foremost, ending completely over in her descent, and finally resting on the bottom with her keel up ; that she was afterwards raised, and taken to New York and repaired by the plaintiffs; that she was damaged in all to the extent of $84,000, and that of this amount $69,000 was the natural, necessary and inevitable consequence of the fire, and that the other $15,000, and no more, was chargeable to the marine disaster; that though, from the breach caused by the collision alone, she was rapidly filling with water, yet that but for the fire she would only have settled down to her promenade deck, and not have gone to the bottom; that in this condition she could easily have been towed to a place of safety, discharged of her water, the breach in her side repaired for a sum not exceeding $5,000, and all the rest of the damage repaired and the boat restored to her former condition for a sum not exceeding $10,000 in addition, including towage; but that the fire burnt off her light upper works, entirely consuming a portion of them, liberated her light freight (which was stowed under her promenade and on her main deck, and entirely housed in at the sides), so that it floated off, and that thus her floating capacity was reduced to such an extent that she finally went down.

" This evidence, tending to prove, and by which the plaintiffs claimed that they had proved, that the steamer would have floated or swum, after and notwithstanding the injury she received by the collision, had no fire intervened, was from the testimony of nautical men, who testified that they were practically acquainted with steamers of this character, and from

a civil and mechanical engineer, who testified that he was well versed in his profession, and that he had made full and elaborate estimates of the materials and equipments of the boat and her cargo, upon data submitted to him by the plaintiffs with special reference to the question whether or not, if simply filled with water, she would have sunk to the bottom, or only settled to her upper or promenade deck, and still have floated or swum. The evidence tending to prove, and by which the plaintiffs claimed they had proved, the time when the fire first broke out, the extent of the conflagration before she sank, the length of time she floated after the commencement of the fire, and the other circumstances attending the fire, was mainly from eye-witnesses of the same.

" There was also evidence to prove that the plaintiffs paid for raising the steamer $22,500, and that this was the precise value of the wreck when raised. It was further in proof that it actually cost the party who raised the wreck over $40,000.

" The plaintiffs also offered evidence to prove that, after the loss, and after the wreck was raised and in a situation to be examined, she was examined by the defendants before they declined to pay the loss.

" The defendants offered no witness on the trial, nor did they take any exceptions to the ruling of the court on the admission of evidence, except to the following question put by the plaintiffs to the agent of the wrecking company, who raised the sunken steamer: " What did the steamboat company (the plaintiffs) pay you for raising the boat ?" To this question the defendants objected. The court overruled the objection and admitted the evidence, to which ruling the defendants duly excepted.

" The plaintiffs offered evidence to prove the value of the steamer before the collision, to which the defendants objected, and the court thereupon excluded the evidence. At the conclusion of the evidence and argument, the defendants requested the court to charge the jury as follows :

" 1. The insurance effected in this case was against loss or damage by fire. The insurers took upon themselves no risk whatever, and are not liable for any loss, the efficient cause of which was a marine disaster.

" 2. In case of the concurrence of different perils, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient predominating peril, whether it is or is not in activity at the consummation of the disaster.

" 3. If, therefore, the jury shall find that the fire was simply the result of the marine disaster, and that disaster, to wit, the collision, was the efficient predominating cause of the loss, then they are to regard the fire simply as incident to the marine disaster, and the insurers against fire alone will not be liable.

" 4. If the jury in any event could consider the burning as a risk within the terms of the policy, they are bound to return no greater damages than the actual cash value of the steamboat at the time the fire happened; and if the jury shall find that at the time of the breaking out of the fire the steamer had received her death wound, and that she would have inevitably perished of the collision, then no damages are to be assessed against the defendants, since the fire would add no loss to that which was already total.

" 5. The defendants are liable only for damages actually proved to be caused by the burning. They are not liable for damages done to the steamer in attempts to raise her. And the burden of proof is on the plaintiffs to show, not only that they received some damage from the burning of the steamer, but also the exact amount of that damage, separate and apart from the actual damage done by the collision, and also separate and apart from the damage in various attempts to raise her. If the plaintiffs show no such distinct and definite loss, then they must fail to recover.

" 6. In no event can the defendants be liable for the cost of raising the vessel, and the jury are to disregard that wholly in their calculations.

" 7. By the terms of the policy, the defendants are not bound to pay until proper proofs of loss have been made out and presented. There is no evidence before the jury that any such proofs of loss have ever been presented to the company. The plaintiffs rely on a waiver by the defendants of such

proofs. A waiver is an intentional abandonment of a known right. In order to find a waiver in this case, the jury must find that the defendants intentionally abandoned all their right to demand proofs of loss; and in any event, the defendants would have sixty days after the waiver took effect to pay the loss; and a suit brought within the sixty days is prematurely brought, and cannot be sustained, as a waiver could confer no greater right than would arise under the required proofs.

" 8. The rule of damages in the case at bar has been determined by the parties in their contract of insurance, and that rule is the cash value of the subject insured at the time the fire happened; and the plaintiffs having failed to show what was the cash value of the steamer at such time, the verdict must be for the defendants.

" 9. If the jury shall find that the fire was the result of the collision, then they must return a verdict for the defendants, because in such case the collision would be the efficient and predominating cause of loss."

The court charged the jury as follows:

" The contract upon which this suit is brought is for indemnity for loss or damage by fire on the steamer City of Norwich, owned by the plaintiffs. This contract was in force before and at the time of the fire. The plaintiffs claim that they have suffered loss by fire to an amount exceeding the entire insurance on their boat, and that the defendants are liable to them on this policy. The questions for the jury are, whether the plaintiffs' loss was the result of the fire, and if so, what was the extent of that loss.

" Before noticing the main fact in controversy, I will dispose of two questions of law raised by the defendants, and which rest upon undisputed facts. 1. The defendants object that proofs of loss were not furnished by the plaintiffs, in compliance with the condition to that effect in the policy. 2. That the suit was brought before any right of action had accrued under the policy, sixty days not having elapsed after the alleged waiver of proofs.

"As to the first question, it is true in fact that no formal

proofs of loss were furnished in accordance with the terms of the condition in the policy. But this point need not trouble the jury. The plaintiffs gave the defendants proper and timely notice that the loss had occurred, and the latter, after examining the wreck, and enquiring into the circumstances, and before the plaintiffs were bound to present proofs of loss, denied all liability under the policy, and refused to pay any loss resulting from the disaster, on the ground that it was a loss by marine and not by fire peril. This denial of all liability whatever by the defendants was, in judgment of law, a waiver of any further proofs of loss provided for in the policy.

" The second objection, that the suit was instituted before any right of action had accrued by the terms of the policy, need not embarrass you. The defendants having denied all liability, and declined to pay, the condition fixing the time within which no suit should be brought, to wit, sixty days after proof of loss should be furnished, was no longer binding, and the plaintiffs could bring their action at once.

" The main question for the jury to determine is, whether the loss sustained by the plaintiffs was the result of the fire; in other words, whether the damage they claim was the natural, necessary and inevitable consequence of the fire. This depends upon the condition of the steamer after she was struck. A short time before the fire broke out she came in collision with a schooner. The circumstances of the collision are not material here. According to the statement of several witnesses she was cut through below the water line, immediately began to fill, and in ten or fifteen minutes was discovered to be on fire; and in half or three-quarters of an hour she went to the bottom, ending over as she descended, and resting on the bottom with her keel up. The question is, would she have gone to the bottom but for the fire? This is a vital question, and must be decided by the jury in the negative before the plaintiffs can recover. You will say, in view of the evidence, whether she would have gone to the bottom, or only settled down to her promenade deck and remained suspended in the water, but for the effect produced by the fire. If she would not have sunk, but only settled in the water to

the promenade deck, except for the effect of the fire in re-
ducing her floating capacity, then the plaintiffs are entitled to
recover, not only damage for what was actually consumed,
but all the damage which inevitably resulted from the burn-
ing.

"The plaintiffs have offered in evidence the opinions of
nautical men, acquainted with steamers, and that of a civil
and mechanical engineer, who testified that he had made a
careful computation of the floating capacity of the boat and
her contents upon data submitted to him. These witnesses
give it as their opinion that she would not have sunk below
her promenade deck had not the fire consumed a portion of
her upper works. The question is one of fact for the jury.
If they find upon the evidence that the boat would have con-
tinued to float, so that she could have been towed to a place
of safety had the fire not occurred, then they will find a ver-
dict for the plaintiffs. But, as I have already intimated, if
you find that she would have sunk to the bottom from the
effect of the collision, and without the intervention of the
fire, the plaintiffs cannot recover.

"The remaining questions relate to the damages. You
must distinguish between the damage resulting from the col-
lision and that resulting from the fire; and in estimating the lat-
ter you will take the boat in the condition she was in after the
collision and before the fire had commenced its work. The
plaintiffs claim upon the evidence that the damage done by
the blow of the schooner did not exceed $5,000. To this
they admit should be added a sum not exceeding $10,000 to
get her into port, free her of water and restore her to as good
a condition as she was in before the injury. This calculation
is based upon what they claim the evidence shows would have
been the state of things had no fire occurred. These two
sums, amounting to $15,000, the plaintiffs insist is the extent
of the damage resulting from the marine disaster. The
plaintiffs also claim that the whole damage done by the col-
lision and fire was $84,000. Deducting the $15,000 as charge-
able to the marine disaster, there remains $69,000 as directly
chargeable to the fire. Of the accuracy of these claims you

are to decide upon the evidence before you. If the defendants are liable at all, they are liable for one-fifteenth of the loss which the plaintiffs suffered from the fire.

" The mode in which the damages should be estimated has occupied my attention. You will remember that the court excluded evidence of the value of the steamer before the collision took place, upon objection being made by the defendants' counsel, as her condition the moment the fire took place is the one to be considered. The plaintiffs' estimate of the damage is based upon the cost of repairing her and restoring her to her former condition, exclusive of the amount they admit is properly chargeable to the collision. You will determine upon the evidence whether, in your judgment, the repairs that were put upon her enhanced her value beyond her cash value before the commencement of the fire. If they did, you will deduct from the damage you find proved, a sum equal to such increase of value. If on the other hand you find that her restoration was only to her former condition, and did not enhance her value beyond what it was when the fire commenced its work, you will, if you find for the plaintiffs, give one-fifteenth of the cost of restoring her to the condition she was in when the fire took place.

" Where I have not charged you in conformity to the request of the defendants they may consider their requests denied."

The disputed facts in this case lay within a very limited range and were all distinctly submitted to the jury. The only matter now for consideration is whether the court correctly instructed the jury on the questions of law applicable to the facts.

1. As to waiver of proofs of loss. This point was raised on the trial, and, although not insisted on upon the argument of this motion, we will notice it here. It is conceded that there were no formal proofs presented to the defendants as provided for in the policy. But the motion finds, as the written admission of the defendants produced on the trial and made a part of the motion conclusively proved, that the plaintiffs gave the defendants timely and proper notice that

the loss had occurred, and that the latter, after examining the wreck, and enquiring into the circumstances, denied all liability under the policy, on the ground that the loss was the result of a marine and not a fire peril. The motion also finds, in strict accordance with the fact, that this was all done before the time within which the plaintiffs, by the terms of the policy, were bound to present the formal proofs, had expired. The court charged the jury that this denial of all liability whatever by the defendants was, in judgment of law, a waiver of any further proofs of loss. On this point the authorities are numerous and decisive, and fully sustain the rule laid down by the court. The denial by the defendants of all liability in this case expressly conceded that there was a loss, and was a notice to the plaintiffs that they would not be bound in any event, though formal proofs were furnished. Presentation of proofs under such circumstances was of no importance to either party, and the law rarely, if ever, requires the observance of an idle formality, especially after the party for whose benefit the original stipulation was made, has rendered conformity thereto unnecessary and practically superfluous. *Schenck* v. *The Mercer County Mut. Fire Ins. Co.*, 4 Zabr., 447 ; *Allegre* v. *The Maryland Ins. Co.*, 6 Har. & Johns., 408 ; *McMasters* v. *The Westchester County Mut. Ins. Co.*, 25 Wend., 379 ; *Francis* v. *The Ocean Ins. Co.*, 6 Cow., 404 ; *Taylor* v. *The Merchants Fire Ins. Co.*, 9 How., 390 ; *O'Niel* v. *The Buffalo Fire Ins. Co.*, 3 Comst., 122 ; *The Maryland Ins. Co.* v. *Bathurst*, 5 Gill & Johns., 159; *Graves* v. *The Washington Marine Ins. Co.*, 12 Allen, 391.

2. There is no error in that part of the charge which instructed the jury that the suit was not prematurely brought. There was a provision in the policy that the loss was payable at any time within sixty days after notice and preliminary proofs to the underwriters. Had the matter gone through the formal stages provided for in the policy and the proofs been made without any denial of all liability on another ground, then no suit could have been sustained on the policy until the sixty days had expired. This clause was for the protection or convenience of the underwriters ; but when they waived the pre-

liminary proofs they also waived the benefit of this stipulation and rendered it nugatory. It would be absurd to say that they still retained the right to have sixty days within which to pay a loss which they had declared that they would not pay at any time nor under any circumstances. *The Columbian Ins. Co.* v. *Catlett*, 12 Wheat., 392; *Allegre* v. *The Maryland Ins. Co.*, 6 Har. & Johns., 408; *Phillips* v. *The Protection Ins. Co.*, 14 Misso., 220.

, 3. We discover no error in that part of the charge in which the court submitted to the jury the question whether or not the proximate cause of the loss for which a recovery was sought was to be found in the fire which followed the collision. There was little or no controversy about the facts which characterized the disaster up to the time the fire broke out. The boat was struck on her port side forward of her wheel-house and her hull stove in below the water line. She immediately began to fill, and in ten or fifteen minutes after the collision the water rose to her furnaces and forced the fire out upon her wood-work. It made rapid progress and soon enveloped her in flames. She continued to float for half or three-quarters of an hour, and until a considerable portion of her upper works was consumed, when she went down, bow foremost, ending completely over and resting on the bottom keel up in about twenty fathoms of water. Up to the moment the fire broke out all the damage the boat had received was the wound in her side and the injury resulting from the water which rushed in. And here an important question of fact arose, and that was, whether the consequences resulting from the collision alone, without the intervention of the fire, would have gone beyond her filling and settling in the water to her promenade deck, and there remaining suspended in the water until she could be towed to a place of safety, her side repaired, and the whole boat restored to her former condition. The uncontradicted evidence was that had she so remained suspended in the water, she could easily have been towed to a place of safety, her wound repaired, and every part of the boat, including her furniture which would have been injured by water, restored to its original condition before the collision,

for a sum not exceeding $15,000. The actual loss proved however was about $84,000. On this point there was no conflicting evidence. The difference between these sums is $69,000, and this latter sum was claimed by the plaintiffs to be the amount of their loss naturally and necessarily resulting from the fire, and which, but for the fire, would not have happened. They offered evidence to show that, from the predominance of the floating over sinking material in her structure and cargo, in connection with the fact that she was so housed in from stem to stern between her main and upper or promenade deck as to keep the cargo in its place although immersed in water, her sinking was impossible as a result of the collision merely. They also offered the testimony of eye-witnesses of the conflagration to prove that she did actually float for half or three-quarters of an hour, and that it was not till her upper works were all on fire and nearly consumed, by which her light freight was liberated and enabled to float away, and her floating capacity thus greatly reduced, that she finally sunk. To overcome this evidence no proof was offered by the defendants. The court instructed the jury that the contract upon which the plaintiffs sought to recover was one of indemnity for loss by fire only, and that therefore whether her sinking was the natural and necessary result of the fire became a vital question. If the jury found this question in the negative then the plaintiffs could not recover. This instruction was more favorable to the defendants than they had a right to demand, for it was conceded that a considerable portion of the steamer's upper works was actually consumed. The other injuries resulting after the fire broke out for which the plaintiffs sought to recover, were occasioned by her sinking to the bottom. But in order to simplify the question to the jury they were instructed that, if they found the boat would have finally sunk had no fire broken out, their verdict must be for the defendants. They must therefore have found by their verdict that she would not have sunk but for the fire, and consequently that all the damage which naturally resulted from the marine injury was $15,000, and that all the rest was the natural and necessary result of the fire.

This part of the charge may not have been couched in the formal and technical language of the text writers on this branch of the law, but it distinctly presented the question as to the proximate cause of the loss for which a recovery was claimed. The effect of the verdict therefore is to bring the case within the scope of the sound proposition of Phillips (on Insurance, vol. 1, p. 692, 4th ed.) that "in case of the concurrence of two causes of loss, one at the risk of the assured and the other insured against, or one insured against by *A* and the other by *B*, if the damage by the perils respectively can be discriminated, each party must bear his proportion." In the case before us this was clearly done. The loss resulting from the fire was distinctly separated by the evidence from any loss resulting from the collision, and the jury were instructed that the plaintiffs could recover only for such loss as naturally and necessarily resulted from the former element. There was no conflict of evidence on this point, and the jury found no damages except such as were chargeable to fire as the proximate cause. It is well settled by numerous authorities that the proximate cause of loss only is to be looked to. This rule prevails in both fire and marine insurance. JEWETT, J., in *Yates* v. *The Madison County Mut. Ins. Co.*, 1 Selden, 478, and cases there cited.

4. The rule of damages was correctly stated under the circumstances. The rule prescribed by the policy was the cash value of the boat just before the fire. The offer was made by the plaintiffs to prove her cash value, deducting the amount she was damaged by the collision, including all its necessary consequences. To this mode the defendants objected, and the only other mode was to ascertain what it cost to repair the damage necessarily resulting from the fire. The jury were instructed that if the cost of repairs exceeded the fire damage, and rendered the boat more valuable, they should deduct the excess. Under the instructions the plaintiffs could obtain no more than indemnity for the loss by fire. This they were entitled to.

5. The objection to the allowance of $22,500 for raising the wreck is untenable. This was found to be the precise

value of the wreck when recovered. It was in proof that it cost over $40,000 to raise it, but no more was allowed than the value of the same when raised. So much was saved as from an otherwise total loss, and as the defendants had the benefit of it in the adjustment of the damage, they are chargeable with the necessary and reasonable cost of saving it.

A new trial is therefore denied on all the grounds.

In this opinion NELSON, J., concurred.