HELENA A. MEAGHER, Appellant, *v.* THE LIFE UNION, Respondent.

*Assessment life insurance — effect of a certificate of membership — burden of proof as to membership — assignability of claim — when proofs of death need not be furnished by the beneficiary.*

The issue to a person by an assessment life insurance association of a certificate of membership therein establishes *prima facie* the fact of membership, and throws upon the association the burden of proving that the person by some act has lost such standing. Such a certificate is assignable after a refusal by the association to pay the loss.

It was requisite, under such a certificate, to make proofs of death upon blanks which were to be furnished by the association, and the beneficiary applied for blank proofs. To this application the association replied that the policy was void for the non-payment of an assessment and sent no blank proofs.

*Held,* that the beneficiary was thereby excused from making proof of death which under the circumstances would have been of no use to either party to the controversy.

Appeal by the plaintiff Helena A. Meagher from a judgment of the Supreme Court, entered in the office of the clerk of Oneida county on the 2d day of February, 1892, dismissing the complaint after a trial at the Oneida Circuit before the court and a jury.

Plaintiff's complaint alleges the defendant is a " domestic corporation duly organized and incorporated under and pursuant to the laws of the State of New York, as a co-operative or assessment life insurance association or society, and located and doing business as such in the city of New York; that the defendant, upon due application therefor, on or about the 3d day of December, 1888, received Honorah Kelly, then of the city of Oswego, State of New York, as a member of the defendant, and thereupon issued to her a certificate or policy of membership therein; that thereupon the said Honorah Kelly became and was a member of the defendant in good standing; that in and by said certificate or policy of membership and the contract between said Honorah Kelly and the defendant, the defendant insured the life of said Honorah Kelly in the sum of $1,000, for the benefit of Mary Kelly, daughter of said Honorah Kelly, and thereby agreed that within ninety days after approval of proofs by the executive committee of the defendant of the death of said Honorah

Kelly, the defendant would pay to said Mary Kelly the sum of $1,000 from the mortuary or benefit fund of the defendant at the time of said death, or from any moneys that should be realized to the said fund from the next premium due from all the members as in said certificate or policy of membership set forth, provided that the amount due should not exceed the product of one premium payment upon policies in force at the time of said death." The answer admitted all of the allegations quoted.

The complaint further alleged that on the 26th day of February, 1891, Honorah Kelly died in the city of Oswego ; also that the policy provided that proofs of the death of said Honorah Kelly should be made upon the blank to be furnished by the defendant, and " after the death of said Honorah Kelly the said Mary Kelly duly applied to the defendant for the blank or blanks mentioned in said certificate or policy of membership for the purpose of making proof as required by said certificate or policy of said membership of the death of said Honorah Kelly ; but the defendant declined and refused to furnish such or any blanks therefor, although the defendant was provided with such blanks, and it was the custom of the defendant, upon the death of any of its members, or of the person insured by defendant, to deliver such blanks to or for the beneficiary that proof of death might be made ; that therefore and thereby the defendant waived the provisions of said certificate or policy of membership requiring proofs of the death of said Honorah Kelly to be furnished." The complaint further alleged that the mortuary or benefit fund of the defendant, at the time of the death of said Honorah Kelly, " amounted to and was upwards of the sum of $1,000 ; " and that the defendant has refused to pay the $1,000 due and payable on said certificate or policy of membership, as aforesaid. The complaint further alleged that "after the claim upon said certificate or policy of membership matured and became vested in said Mary Kelly, as hereinbefore stated, she, for a good and valuable consideration to her duly paid, duly sold, assigned, transferred, conveyed and set over, by an instrument in writing, to this plaintiff her claim, demand and cause of action against the defendant above stated and set out, and this plaintiff thereupon became and now is the owner and holder of the claim under said certificate or policy of membership issued by the defendant, as aforesaid, for $1,000."

The defendant in its answer admitted " that the mortuary and benefit fund of the defendant, at the time of the death of said Honorah Kelly, amounted to and was upwards of the sum of $1,000." * * * And the " defendant admits that the moneys realized to the said mortuary and benefit fund from the next premiums due after said alleged death on all the members, as in said policy or certificate of membership set forth, whose policies were in force at the time of said alleged death, exceeded the sum of $1,000." The answer of the defendant also " admits that it absolutely refused and still refuses to pay the $1,000 named in said policy." By way of defense the answer alleges that the action was prematurely brought ; that no notice was given of the assignment or demand made by the assignee, and that the policy was null and void at the time of the death of Honorah Kelly " by reason of her failure and that of her beneficiary, or anyone on her or their behalf, to pay the premium which had become due and payable on the 3d day of December, 1890." Upon the trial proof was given that Honorah Kelly died February 26, 1891 ; that on the 11th day of March, 1891, Mary Kelly, her daughter and beneficiary named in the policy, addressed a letter to the defendant in the following words :

                                        " OSWEGO, *March* 11, 1891.
" Mr. RALPH MARDEN :

" DEAR SIR.— Please send me blank proofs of loss on policy 5021, H. Kelley, who died February 26th.

                              " Respectfully yours,
                                  " MARY KELLEY,
                                        "*Beneficiary.*"

To that letter she received a reply in the following language :

              " THE LIFE UNION. No. 234 BROADWAY, NEW YORK. ⎫
                  NEW YORK, *March* 12, 1891.                ⎬
                                                            ⎭
" Miss MARY KELLY, *Oswego, N. Y. :*

" MADAM.— I have your favor of yesterday, asking for proofs of loss on policy 5021 on life of Mrs. Honnah Kelly. In reply I would state that the last payment made on this policy was September 15th, 1890, and the premium due November 3d, 1890, was not paid. I sent out two notices to this effect asking payment, neither of which

were replied to. The policy, therefore, became null and void, and ceased to be in force on November 4th, 1890.

" Respectfully yours,

"RALPH MARDEN,

" *Secretary.*"

Proof was also given that the beneficiary, Mary Kelley, on the twenty-first of March, assigned to the plaintiff all and every claim, and " all moneys to which I am entitled under and by virtue of a policy of membership issued to and upon the life of Honorah Kelly, now deceased, by the Life Union of the city of New York," by a written assignment which was acknowledged on the 21st of March, 1891. Plaintiff put the policy in evidence bearing date December 3, 1888, issued by the defendant. Among the provisions in the policy was the following : " Within ninety days after approval of proofs, by the executive committee of the Union, of the death of the above-named member, if occurring during the continuance of this policy in full force and effect, upon the following conditions, there shall be payable to Mary Kelly, daughter, of Oswego, State of New York, if living at the time of said death, * * * the sum of $1,000 from the mortuary and benefit fund of the Union, at the time of said death, or from any moneys that shall be realized to the said fund from the next premium due on all the members as herein-after set forth, it being understood and agreed that the amount due shall not exceed the product of one premium payment on policies in force at time of said death." Another provision in said policy was as follows : " The proofs of loss by which this contract matures must be furnished to the Life Union within six months after death occurs, and must contain full and true answers, under oath, to all questions asked by the company relating to the life, health and death of the deceased member, and the said proofs must be completed upon the blanks furnished by the Union."

At the close of the plaintiff's evidence the defendant moved to dismiss the complaint and to nonsuit the plaintiff upon several grounds. The nonsuit was granted apparently upon the ground " that this action is prematurely brought," and exception was taken by the plaintiff.

*S. M. Lindsley*, for the appellant.

*W. H. Law*, for the respondent.

HARDIN, P. J.:

Under the allegations of the complaint and admissions thereof by the defendant, it must be assumed that it is incorporated under, and governed by chapter 175 of the Laws of 1883, and is " engaged in the business of life insurance upon the co-operative or assessment plan." The defendant issued its policy or certificate of membership to Honorah Kelly, and she thereby became a member of the defendant, and was insured in the sum of $1,000 for the benefit of her daughter, Mary Kelly, which sum the defendant agreed to pay, in case of the death of the assured, from its mortuary or benefit fund, or from any moneys that should be realized to said fund from the next premium or assessment due from all the members. It appears to have been admitted upon the trial that, at the time of the death of Honorah Kelly, the mortuary fund amounted to upwards of $1,000. The production of the certificate of membership established *prima facie* Honorah Kelly's standing as a member of defendant's association, and cast the burden of proof upon the defendant to show such facts and circumstances as should indicate that she had lost such standing at the time of her death. (*Demings* v. *Supreme Lodge K. of P.*, 60 Hun, 353; *Supreme Lodge* v. *Johnson*, 78 Ind., 111.) The complaint contained an allegation that " said Honorah Kelly became and was a member of the defendant in good standing." That allegation was admitted expressly by the answer of the defendant, and must, therefore, be taken as true for all purposes of the action. (Code, § 522; *Quinby* v. *Carhart*, 30 N. E. Rep., 973.)

(2.) After the refusal by the company to furnish blanks, Mary Kelly had an undoubted right to assign any cause of action which she had against the defendant; nothing in the policy prohibited such assignment. (Cook on Life Ins., § 72, p. 118; *Mut. Benefit Assn.* v. *Rolfe*, 76 Mich., 146.)

(3.) Under the policy, presumptively, it was the duty of the beneficiary to furnish " proofs of loss   \*   \*   \*   within six months after death occurs," and by a provision in the policy such " proofs must be completed upon the blanks furnished by the Union." With a view of carrying forward that duty, the beneficiary applied by letter written on the eleventh of March, and sent to the defendant for " blank proofs of loss on policy 5021, H. Kelley." That application seems to have been received by the defendant, considered, acted.

upon and a refusal made to furnish the blanks; and the position taken by the company in its refusal was, that "the policy, therefore, became null and void and ceased to be in force on November 4th, 1890." After the beneficiary received such notice of such refusal she was entitled to assume that the company would furnish no blanks to her upon which proofs could be made, and that proofs would be unavailing, and that the company absolutely refused to pay.

In section 469, May on Insurance, it is said: "A distinct denial of liability and refusal to pay on the ground that there is no liability is a waiver of the condition requiring proofs of the loss. It is equivalent to a declaration that they will not pay, though the proof be furnished; and to require the presentation of proof in such a case, when it can be of no importance to either party, and the conduct of the party in favor of whom the stipulation is made has rendered it practically superfluous, is but an idle formality, the observance of which the law will not sustain. * * * And, of course, the waiver of the proof is a waiver of the condition that payment is not to be made till a limited time after the proof; so that, in such case, suit may be brought at once upon the denial of liability, although the time within which, after proof of loss, the payment would be demandable may not have expired." The author cites for the doctrine just stated, *Norwich and New York Transportation Company* v *Western Massachusetts Insurance Company* (34 Conn., 561). (See *Citizens' Co.* v. *Boisvert*, 11 Que. L. R., 337.)

The learned counsel for the respondent calls attention to the case of *McConnell* v. *The Iowa Mutual Aid Association* (79 Iowa, 757). The language of the policy in that case differs somewhat from the language of the policy at bar. We think that case does not overrule the doctrine we have taken from the writers on insurance. We think the language of the court in the case reported, *Norwich and New York Transportation Company* v. *The Western Massachusetts Insurance Company* (34 Conn., 561), is appropriate to the case before us and pertinent to the question under consideration. In speaking of a clause in the policy in that case, somewhat similar to the one before us, SHIPMAN, J., said: "This clause was for the protection or convenience of the underwriters, and when they waived the preliminary proofs they also waived the benefit of this stipulation and rendered it nugatory. It would be absurd to say that they

still retained the right to have sixty days within which to pay a loss, which they had declared they would not pay at any time nor under any circumstances." This doctrine finds countenance in the following cases: *Columbian Insurance Company* v. *Catlett* (12 Wheat., 392); *Allgree* v. *The Maryland Insurance Company* (6 Har. & Johns., 408); *Phillips* v. *Protection Insurance Company* (14 Mo., 220); *Williamsburg City Fire Insurance Company* v. *Cary* (83 Ill., 453); *Ætna Insurance Company* v. *Maguire* (51 id., 342); *California Insurance Company* v. *Gracey* (15 Col., 70); *Travelers' Insurance Company* v. *Harvey* (82 Va., 949). (See, also, *Cooper* v. *U. S. Mut. Accident Association*, 57 Hun, 407.)

We think the evidence produced by the plaintiff warrants the conclusion that the defendant absolutely refused to furnish blanks upon which proofs of loss could be made, and that the defendant intended to convey to the beneficiary the idea that proofs of loss would be useless and unavailing, and to take the position that the company absolutely refused to recognize the policy issued by it to Honorah Kelly, and to declare that the same was null and void, and that the beneficiary had no claim upon the defendant. Under such circumstances, we think the defendant was not entitled to delay the plaintiff in the assertion of her claim by suit upon her supposed cause of action against the defendant.

We are, therefore, of the opinion that the nonsuit ought not to be sustained upon the ground suggested at the circuit. We think a new trial should be granted.

MARTIN, J., concurred; MERWIN, J., not sitting.

Judgment reversed and a new trial ordered, with costs to abide the event.