## DEZELL, Appellant, v. FIDELITY & CASUALTY COMPANY OF NEW YORK.

### In Banc, June 30, 1903.

1. **Insurance:** NOTICE OF ACCIDENT: PLEADING TO MERITS: WAIVER. An insurance company by pleading that the insured's death was from a cause not covered by the policy does not waive the defense also set up in the answer that the notice required by the policy to be given the company immediately on the death of the insured was not given.

2. ———: ———: ———: DEFENSES. A defendant may in his answer avail himself of as many defenses as he may have, provided they be not inconsistent; that is, provided the proof of one does not disprove another. And even when he pleads inconsistent defenses, neither the plaintiff nor the court can choose for him which he will abandon; he is entitled to make the election. And this rule of pleading is as much available to an insurance company as to any other defendant. It can in its answer to a suit on a policy, plead that plaintiff can not recover because the death or loss was not covered by the policy, and also that plaintiff can not recover because the notice of death or proof of loss was not given within the time prescribed by the policy.

3. ———: PLEADING: GENERAL AND SPECIFIC DENIAL. In a suit on an insurance policy the company admitted the issuance of the policy,

that it was in full force at the date of the death of the insured, and then "denies each and every allegation in said petition not hereinafter specifically admitted." *Held*, that this denial amounts to nothing; it is neither the special nor general denial called for by the statute.

4. ———: ———: ACCIDENTAL DEATH: MORPHINE: "EXTERNAL MEANS:" NOTICE OF DEATH: FORFEITURE: NO DEFENSE PLEADED: JUDGMENT NON OBSTANTE. The policy insured the life of plaintiff's husband against "bodily injuries sustained through external, violent and accidental means," and stipulated that the insurance did not cover "injuries fatal or otherwise resulting from poison or anything accidentally or otherwise taken, administered or inhaled," and that it was issued on the express condition that "immediate written notice of accident must be given to the company, and that affirmative proof of loss must be furnished as soon as the nature of and extent of same can be determined," but there was no stipulation that a failure to give such notice should work a forfeiture of the policy. The petition charged that the insured "was suffering from neuralgia or other physical ailment, for which said affliction, to allay the pain thereof, his attending physician had prescribed and was then prescribing the use of a certain remedial agent and sedative known as morphine; that the insured took said morphine for the purpose of allaying the pain occasioned by the disease from which he was suffering, in accordance with the advice of his physician, and death resulted thereafter accidentally in consequence thereof." The answer pleaded that the insured "did not die of any bodily injuries sustained through any external, violent or accidental means, but on the contrary died from the result of a medicine commonly called morphine, intentionally and knowingly taken by said deceased without expecting or intending the same should produce death." *Held*, *first*, that the first part of this plea states a mere conclusion; *second*, that a death caused in the manner stated in both petition and answer is the result of "external, violent and accidental means" within the meaning of the policy, and therefore, plaintiff was entitled to judgment on the merits; *third*, the only purpose of the notice called for by the policy was to put the company on inquiry, and as it shows by its answer that it knows as much about the facts as the plaintiff does and agrees with plaintiff as to the facts, it will be presumed that it had notice in due time, and, hence, that answer shows no defense, and the judgment should be for plaintiff notwithstanding a verdict for defendant.

5. ———: ACCIDENT: MORPHINE: EXTERNAL MEANS. Death resulting from an overdose of morphine taken to abate neuralgic pain is embraced in a policy which insures against "bodily injuries sustained through external, violent and accidental means." Nor can payment of the insurance be avoided by the fact that the policy further recites that "this insurance does not cover injuries fatal or otherwise, resulting from poison or anything accidentally or other-

Dezell v. Fidelity & Casualty Co. .

wise taken, administered or inhaled," for the law is that medicine taken in good faith to alleviate physical pain, even though it results in unexpected and unintentional death, does not avoid policies insuring against "injuries sustained through external, violent and accidental means."

6. ———: NOTICE OF DEATH: PRESUMPTION DRAWN FROM ANSWER. Where the answer agrees with the petition as to the facts which caused the insured's death, the company will not be permitted to avoid payment of the policy on the ground that timely notice of his death was not given according to the terms of a policy which contained no forfeiture clause in case such notice was not given, but the presumption of law in such case is that the company had due notice. That presumption is not as a finding of facts from the evidence, but is drawn from the answer, which it is the province of the court to draw.

7. ———: FAILURE TO GIVE NOTICE: FORFEITURE. Where no forfeiture is provided for by an insurance policy for a failure to give notice of death, etc., the courts are not authorized to supply one. Courts do not favor forfeitures.

8. ———: ———: ———: PURPOSE OF NOTICE. Where no forfeiture is prescribed in the policy for failure to give notice of death, the court should have regard to the consequence that results from a failure to give such notice as shown by the facts in the case, and if it appears that the purpose for which the notice and proof of loss were required has really been accomplished, the assured should not be precluded from a recovery. That purpose is to put the company on inquiry, and if its answer in a suit on the policy contains a statement of facts which shows it knows the same facts that the assured does as to the cause of death, but draws a different conclusion of law as to its liabilities under those facts, the courts will reject its conclusion, and hold that the answer shows that the purpose for which the notice was required has been accomplished. ·

PER MARSHALL, J., WITH WHOM BURGESS, J., CONCURS.

1. Insurance: NOTICE OF ACCIDENT: WAIVER. The insurance company by pleading that its policy did not insure against death caused in the manner set out in the petition, waives the defense, also pleaded, of a failure to give the notice required by the policy to be given. Held, also, that the time at which the waiver occurred is immaterial; that it may occur as well after suit is brought as before, as well after the time for giving the notice has expired as before; and the great weight of modern authority being that if demand of payment is made after the time for giving the notice has expired and before suit is brought, and payment is refused because of a breach of a substantive provision of the policy, such refusal is a waiver of notice, the rule ought to be that the pleading in the answer of a breach of the substantive provisions of the policy is also a waiver of notice.

2. ——: ——: ——: PLEADING TO MERITS. The defense of a want of notice, where the company refuses to pay on the ground that the policy did not insure against death or loss caused in the way alleged in the petition, is not a question of inconsistent pleading at all; a plea to the merits and a plea of a lack of notice are not to be disposed of by the determination of the question of whether or not those defenses are inconsistent; nor is a plea to the merits strictly a technical waiver of the defense of a lack of notice; but the rule of law being that a refusal to pay for a substantive reason dispenses with the necessity for making proof of loss or giving notice of death, which rule is based on the ground that the company would not pay even if such proof of notice had been made, and therefore the making of such proof or notice would be an idle and useless thing, the same rule should be applied to the answer and the holding should be that, if the company in that answer pleads to the merits, that plea is an abandonment of the other plea of a lack of notice.

3. **Practice:** MANNER OF OBTAINING JUDGMENT. Every plaintiff has two remedies open to him: he can take the chance of defeating defendant on the issues as a question of fact before the jury, and if he loses, he can undertake to defeat the defendant on a matter of law before the court by a motion in arrest, or by a motion for judgment *non obstante veredicto*, or by any other appropriate motion. Nor can he be denied the right to pursue the latter remedy by the fact that he submitted the issues to a jury, took his chances of winning and lost. And the same remedies are open to the defendant.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

REVERSED AND REMANDED (*with directions*).

*R. J. Ingraham* and *J. C. Rosenberger* for appellant.

(1) The trial court erred in overruling plaintiff's motion for judgment *non obstante veredicto*, for the reason that on the pleadings and the undisputed evidence there was no issue for submission to the jury, and plaintiff was and is entitled to judgment. It will be observed from defendant's amended answer that it places its defense on two grounds, viz.: (a) That the policy had become forfeited by alleged failure to

serve the company with notice and proof of death; (b) that the plaintiff's accident was not covered by the policy, being within one of the numerous exceptions contained in the policy. As to the first defense we say that all issues made by the pleadings as to notice and proof of death became and were wholly immaterial in view of the nature of the second defense; that the two defenses are wholly inconsistent for that if the death of insured was not covered by the policy, then the service of notice and proofs would have been an idle ceremony. The proposition that defendant waived notice and proof of death by the nature of the other defense interposed is abundantly supported by the authorities both in this and other States. They will be referred to in another subdivision of this brief. As to its second defense, defendant introduced no evidence whatsoever and plaintiff's case as to the circumstances of the death of the insured stands uncontradicted. Indeed, plaintiff's claim that the death of insured was due to the accidental taking of an overdose of morphine, taken in good faith as a remedial and curative agent for the relief of pain, stands admitted by defendants. The amended answer of defendant states that the insured "died from the result of a medicine, commonly called morphine, intentionally and knowingly taken without expecting or intending the same should produce death." If we are correct in our contention that notice and proof of death were waived by the nature of the defenses interposed, and in our contention that such an accident as is shown by the undisputed evidence and the admissions in the answer is not within any exception contained in the policy, then manifestly there was no issue of fact for the jury to try and plaintiff's motion for judgment *non obstante* should have been sustained. Bank v. Hainline, 67 Mo. App. 483; Lionberger v. Pohlman, 16 Mo. App. 398; Borgraefe v. Knights of Honor, 22 Mo. App. 148. (2) Where morphine is taken in good

faith, on medical advice, for the relief of pain and by accident an overdose is taken, the exception in the policy against death "resulting from poison or anything accidentally or otherwise taken" does not apply and was not intended to apply for the reasons: (a) That it was not and could not have been reasonably within the contemplation of the parties that the insured should be debarred by such clause from the use of morphine in good faith for medical purposes on medical advice; (b) to give said clause such an effect would lead to unreasonable and absurd results; and (c) the words "poison or anything accidentally or otherwise taken" are not broad enough to include a death from morphine, taken as medicine and not as poison. Renn v. Knights of Pythias, 83 Mo. App. 442; Higbee v. Ins. Co., 66 Barb. 462; Davey v. Ins. Co., 123 U. S. 739; s. c., 140 U. S. 76; Ins. Co. v. La Boiteaux, 4 Am. Law Record 1; s. c., 5 Bigelow Life & Accident Rep. 437. Under the rules of construction of contracts of insurance that every intendment will be in favor of the insured, the clause ought to be strictly construed against the company. The question in all cases is, how did the assured reasonably understand the policy, not what did the company intend? Hoffman v. Acci. Indemnity Co., 56 Mo. App. 301; Brown v. Assur. Co., 45 Mo. 221; Ins. Co. v. Dunlap, 160 Ill. 242; Harper v. Ins. Co., 19 Mo. 506; Higbee v. Ins. Co., supra; Ornberg v. Acci. Co., 101 Ky. 303. The death in the case at bar was within the general terms of the policy providing against death due to "external, violent and accidental means." Healy v. Mut. Acci. Assn., 133 Ill. 556; Barry v. Acci. Assn., 23 Fed. 712; affirmed, 131 U. S. 100; Paul v. Travelers' Ins. Co., 112 N. Y. 472; Accident Co. v. Reigart, 94 Ky. 547. The death in the case at bar, under all the authorities, being within the general words of the policy, "external, violent and accidental means," it results that defendant is relying on the alleged breach of one of the exceptions in the policy as a ground for

forfeiture of the insurance. Forfeitures are not fa-
vored by the law and the courts will so construe a
policy, if possible, as to carry out its purpose of grant-
ing indemnity and not to defeat it. When the language
of an insurance policy is capable of two constructions,
that one must be adopted which is most favorable to the
insured; and where there are inconsistent provisions,
effect will be given to the one most favorable to the in-
sured. Brown v. Assur. Co., 45 Mo. 221; Hoffman v.
Acci. Indemnity Co., 56 Mo. App. 301. (3) If de-
fendant desired to exclude an injury resulting from
morphine knowingly and intentionally taken under
medical advice, it should have expressed its intention
in plain and unambiguous terms. Ins. Co. v. Froiland,
161 Ill. 30; Renn v. Supreme Lodge, 83 Mo. App. 442.
(4) Notice and proof of death were waived by defend-
ant's answer and by its amended answer. It is now set-
tled doctrine that the provisions contained in policies
of insurance requiring notice and proof of loss may
be waived by acts done by the company after the time
has expired within which notice and proofs are re-
quired to be submitted, that no new consideration is re-
quired to support a waiver of that character and that
no element of estoppel need be present. Equitable Life
Society v. Winning, 58 Fed. 546; Prentice v. Ins. Co.,
77 N. Y. 489; Ins. Co. v. Dierks, 43 Neb. 475; Crenshaw
v. Ins. Co., 71 Mo. App. 48; La Force v. Ins. Co., 43
Mo. App. 518; McComas v. Ins. Co., 56 Mo. 573; Fink
v. Ins. Co., 66 Mo. App. 514; Rippstein v. Ins. Co., 57
Mo. 86. The provision of the policy requiring notice
and proofs being once waived, it is gone forever and
can not be revived without the consent of both parties.
Terti v. Ins. Co., 76 Mo. App. 42; Equitable Life So-
ciety v. Winning, 58 Fed. 546. The amended answer
pleads two affirmative defenses: (a) Lack of notice
and proof; (b) that the death of insured was not cov-
ered by the policy. These defenses are wholly incon-
sistent, because if the death was not covered by the pol-

icy, then the furnishing of notice and proof would have been a useless ceremony—plaintiff would have given notice and proof only to have payment of her claim refused. The joining of these defenses was in itself a waiver of proof. Crenshaw v. Ins. Co., 71 Mo. App. 48; Rippstein v. Ins. Co., 57 Mo. 86; McComas v. Ins. Co., 56 Mo. 573; La Force v. Ins. Co., 43 Mo. App. 518; Ins. Co. v. Dierks, 43 Neb. 475; Ins. Co. v. Hildebrand,. 54 Neb. 306; Aetna Ins. Co. v. Simmons, 49 Neb. 811; Taylor v. Ins. Co., 50 U. S. 433; Allis Co. v. Ins. Co., 11 Col. App. 264; Equitable Life Society v. Winning, 58 Fed. 546. (5) If upon the trial there is nothing to contradict the evidence offered to support a party's case, such party is entitled to a peremptory instruction. Bank v. Hainline, 67 Mo. App. 483; Huttig Sash & Door Co. v. Getchell, 69 Mo. App. 115; Lionberger v. Pohlman, 16 Mo. App. 398.

*Harkless, O'Grady & Crysler* for respondent.

(1) Under the evidence the plaintiff having failed to give any notice of death or claim under the policy, or proof of death until three and one-half years after death, she could not recover. Simms v. Ins. Co., 47 Mo. 54; McFarland v. United States Co., 124 Mo. 204; McCollough v. Ins. Co., 113 Mo. 606; Burnham v. Ins. Co., 75 Mo. App. 394; Edwards v. Ins. Co., 75 Pa. 378; Brown v. Ins. Co., 40 Hun 101; Todsk v. Ins. Co., 29 Pa. 198; Pearson v. Ins. Co., 73 Mo. App. 480; White v. Ins. Co., 128 Cal. 131. (2) The filing of a general denial puts in issue all of the facts which the plaintiff must prove in order to make out its case and in this case the denial of notice. Northrup v. Ins. Co., 47 Mo. 435; Thomas v. Ramsey, 47 Mo. App. 84; Musser v. Adler, 86 Mo. 445; Hoffman v. Parry, 23 Mo. App. 20; Nicholl v. Ins. Co., 144 Mo. 420; Ins. Co. v. Glenn, 13 Ind. App. 365; Ins. Co. v. Capehart, 108 Ind. 270; Hicks v. British American, 162 N. Y. 284. (3) Plaintiff

could not rely upon any claim that a general denial waived the proof and did not rely upon it, but affirmatively undertook to prove that they had given notice and submitted instructions to the jury asking the jury to pass upon that question, and having tendered this issue and submitted the question to the jury, the matter is not even open for discussion as to the effect of the general denial. Bethune v. Railroad, 139 Mo. 574; Harwood v. Thomas, 130 Mo. 225; Oil Well Supply Co. v. Wolfe, 127 Mo. 616; Ellison v. Harrison, 104 Mo. 270; Smith v. Culligan, 74 Mo. 387. (4) A party can not submit an issue to the jury and then, after the jury has found against him on such issue, contend that it ought not to have been submitted. Mastin v. Hammerslough, 72 Mo. 274; Diel v. Stegner, 56 Mo. App. 535; Wilson v. Gibson, 63 Mo. App. 656; Bettes v. Magoon, 85 Mo. 580; Walsh v. St. Louis E. & M. Co., 101 Mo. 534. (5) But, outside of all this, any claimed act of waiver must have been within such time as the plaintiff was bound to make the proof, otherwise the waiver cuts no figure. Ins. Co. v. Coverdale, 58 Pac. 1029; Smith v. Ins. Co., 64 Ia. 716; McDonald v. Bankers Life, 154 Mo. 618; Loeb v. Ins. Co., 99 Mo. 50; Bolen v. Fire Assn., 58 Mo. App. 225; 2 Woods, Ins., 947 and 948; Porter on Insurance, sec. 194; Richards on Insurance, sec. 85; St. Louis I. & S. Co. v. Kyle, 11 Mo. 278. (6) But even if plaintiff had complied with the policy and given any notice or made any proof, still she was not entitled to recover under the express conditions of the policy, because it is conceded that the party did not commit suicide and that he did not take the morphine by accident, but took it knowingly and intentionally. Carnes v. Iowa Company, 106 Ia. 281. (7) Plaintiff was not entitled to recover in any event because the assured died as a result of poisoning or other substance taken. Under the provisions of the policy the defendant was not to be liable in such cases. Kasten v. Interstate Casualty Co., 99 Wis. 73; Westmoreland v. Pre-

ferred, 75 Fed. 244; Early v. Ins. Co., 113 Mich. 58; McGlother v. Provident Mut., 89 Fed. 685.

VALLIANT, J.—Defendant, an accident insurance company, issued its policy March 24, 1891, insuring the life of James Dezell against "bodily injuries sustained through external, violent and accidental means" in the sum of $5,000 payable to his wife, the plaintiff in this suit. It was stipulated in the policy that the insurance did not cover "injuries fatal or otherwise resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled," and further that, "This policy is issued subject to the conditions on the back hereof." Among the conditions on the back were the following: "Immediate written notice of accident must be given to the company; affirmative proof of loss must be furnished as soon as the nature of and the extent of same can be determined, and any legal proceedings for recovery must be commenced within six months in case of death."

The petition states that the insured paid the premiums annually as they became due, and that the policy was in full force on September 28, 1896, when "the said James Dezell was suffering from neuralgia or other physical ailment, for which said affliction, to allay the pain thereof, his attending physician had prescribed and was then prescribing the use of a certain remedial agent and sedative known as morphine. That upon said last-mentioned date said James Dezell took said morphine for the purpose of allaying the pain occasioned by the disease from which he was suffering as aforesaid, in accordance with the advice as aforesaid of his said physician, and that death resulted thereafter upon said date accidentally in consequence thereof." The petition also states that after the death of her husband the plaintiff immediately gave written notice to the defendant and in all other respects complied with the terms of the policy.

The first answer filed was a general denial, but afterwards defendant filed an amended answer in which it admitted the issuance of the policy and that the same was in full force at the date of the death of plaintiff's husband, then denied all allegations of the petition, "not hereinafter specifically admitted." Then the amended answer went on to state the provisions of the policy as hereinafter quoted and averred that the insured "did not die of any bodily injuries sustained through any external, violent or accidental means, but upon the contrary died from the result of a medicine commonly called morphine, intentionally and knowingly taken by said deceased without expecting or intending the same should produce death," and it concluded with this paragraph: "And further answering herein the defendant states that no immediate written notice of said claimed accident charged in plaintiff's petition was ever given to the defendant herein, that no affirmative proof of loss or death or of a claimed accident as alleged in plaintiff's petition was ever furnished to this defendant, nor did defendant ever know thereof, or ascertain that any claim was ever made that said deceased died from an accident within the meaning of the policy sued upon, until three and one-half years after the death of deceased, to-wit, until March 23, 1900, the date of the institution of this suit."

Reply, general denial.

Upon the trial the evidence for the plaintiff tended to prove the allegations of the petition. The evidence on the part of defendant tended to prove that no notice of the accident or death was ever given and that the first information thereof defendant had was through the institution of this suit, March 23, 1900, more than three years after the death of the insured.

The only conflict in the evidence was on the question whether notice of the death had been given. On that point the testimony for the plaintiff was that of a lawyer to whom she had given this, with three ordinary

life policies on the life of her husband, to collect. He testified that he had no distinct recollection of having given the notice, but he thinks he must have done so for the reason that he recollects writing to the three other companies for blanks on which to make out proofs of loss, received the blanks, made the proof and collected the policies. His letter book in which copies of these letters would have been kept was lost. He kept this policy about two years and then returned it to the plaintiff.

The evidence for the defendant tended to show that no notice was ever given and that the first information the defendant had of the death was through the institution of this suit.

The court at the request of plaintiff gave two instructions which were to the effect that if the insured took the morphine only to relieve the pain of neuralgia, and unintentionally and accidentally took an overdose which caused his death, and the plaintiff immediately gave notice of the death by letter addressed to the company in New York, duly stamped and mailed, and in the letter requested the usual blank forms for making proof of loss, to which defendant made no reply, the verdict should be for the plaintiff.

Defendant asked only a peremptory instruction that the verdict should be for defendant, which the court refused.

The case was given to the jury under the instructions asked by the plaintiff and there was a verdict for the defendant. Plaintiff filed motions for a new trial, in arrest of judgment and for judgment *non obstante veredicto*. The court overruled the motions and the plaintiff appealed.

I.

In the opinion in this case filed in Division One, by MARSHALL, J., it is shown that under the averments in the petition and the admissions in the answer, to say nothing of the evidence adduced, the plaintiff was enti-

tled to a judgment unless she was precluded by the failure to give the notice required by the policy. What the learned judge in that opinion on that subject has said leaves nothing more to be said.

But if, under the terms of this policy relating to the notice, and under the facts relating to the death of the insured, as declared and admitted by the pleadings, the defendant would have been discharged from its liability for failure of the plaintiff to give the notice, then we have to decide whether the defendant, by answering as it has, has waived its right to defend on the ground of want of notice.

The position taken by appellant is that the defendant has waived its right to defend on this ground, first, because it first filed a general denial for its answer, and, second, because in its amended answer it takes the ground that the death of the insured was from a cause not covered by the policy and that the denial of liability on the merits of the case is a waiver of a defense based on a less meritorious ground.

There is no difference, so far as this point is concerned, in the position of the defendant in its original answer and that in its amended answer. The petition anticipated the defense of want of notice and advanced to meet it by the affirmative statement that the written notice required by the policy had been given. The general denial joined that issue as well as all others tendered by the petition. The defendant only met the case in the form in which it came.

Appellant's proposition is that defendant by the act of denying in its answer that the policy covered the loss, waived the defense of want of notice, notwithstanding that defense was expressly pleaded also. Some of the cases cited by the learned counsel for appellant lead in that direction, but none of them go to that extent.

Courts do not favor forfeitures, nor do they favor the defeat of a meritorious cause on any purely technical ground. Insurance companies have probably

realized that fact more clearly than any other class of business concerns. The business of life insurance requires of its followers peculiar technical knowledge; the expert in the business knows a great deal more about it than the man of average intelligence who takes out a policy on his own life. The Legislatures in most of the States have recognized that in the act of making a contract for life insurance the company by its peculiar technical knowledge has an advantage over a man of ordinary business capacity, not trained in that art, and have imposed certain conditions upon such contracts for the protection of the insured, which will be enforced even against the express terms of the policy. And not only have the Legislatures exerted their authority in such matters, but the courts of the country also have strained the discretion that lies in the scope of judicial interpretation to prevent a forfeiture of the insurance. Sometimes the reasoning of the court in such case is so technical that to the mind of the layman it but thinly disguises the praiseworthy determination to do justice in that particular case in spite of the letter of the contract.

Clauses requiring prompt notice and proof of loss are to be found in perhaps all policies of insurance, and the courts have never said of them that they were unreasonable, but have said of them in some cases that the companies were estopped from claiming the benefit of them, or that a defense on that ground was waived, under circumstances in which all doubts would have to be resolved against the company in order to reach that conclusion.

In the earlier cases when defense under such a clause was denied, the decision was put on the ground of estoppel. That had reference to refusal to pay before the period, in which proof of loss was required, had expired. Afterwards cases arose in which the defense was denied on account of the conduct of the insurer after that period had expired, and then it was put on the ground of waiver. But to create an estoppel there

must have been conduct on the part of the insurer which induced, or might have induced, the holder of the policy to refrain from furnishing the proof of loss, and to create a waiver there must have been an intention to waive. If we should now go a step farther than any court has yet gone and say that an insurer has no right to make a defense under this clause, although he may have done nothing to induce the insured to refrain from making his proof of loss or nothing to indicate an intention to waive his right, we would have to invent some other reason to sustain that doctrine.

Before going through some of the cases (for they are too numerous to go through all of them) to which we are referred in the briefs of counsel, let us recall the facts touching this point in this case. The insured died September 28, 1896. The testimony for defendant tended to show that the defendant had no notice of the death until this suit was filed March 23, 1900, three years and a half thereafter. No negotiations, no correspondence, no discussion passed between the parties relating to the matter. When the defendant was called into court to answer the suit, it answered and said (or attempted at least to say) that the death was from a cause not covered by the policy, and besides, no notice of the death was given as required by the contract. Appellant asks us now to say that the answer means that the defendant waives the notice. No greater violence could be done to the letter and spirit of the answer than to give it that meaning. No case cited by appellant would justify such an interpretation.

There is no necessity for looking into the cases which hold that when an insurance company informs the holder of the policy, before the period prescribed for making the proof of loss has expired, that it has resolved not to pay the insurance, the policy-holder is excused from the duty of furnishing such proof to the company. The justice and sound logic of those decisions are not questioned. And no one will dispute the proposition that the company may, if it so wills, waive

its right to notice and proof of loss, after as well as before the expiration of the period for furnishing the same. But waiver, unconnected with estoppel, is an act of the will and the result of an intention.

The case first on appellant's list in support of the proposition contended for is Crenshaw v. Ins. Co., 71 Mo. App. 42. There is language in that opinion which, separated from the facts of the case, gives countenance to appellant's position. It is there said: "The adjudicated cases are all in accord to the effect that the refusal to recognize the existence of any claim, or a refusal to pay, renders the delivery of notice and proof of loss a needless ceremony, and is treated as a waiver of a strict compliance with the condition as a preliminary notice and proofs in respect to form and time."

The court does not there say when such refusal must occur in order to have the effect of the waiver mentioned. It says that the adjudicated cases are all in accord with the proposition, by which expression we understand the court to mean that it announces no new doctrine nor takes any advanced position, but cites adjudicated cases which it says announces the same principle. That case arose in a justice's court where there were no pleadings, and the only means the appellate court had of ascertaining what the issues were that had been tried in the court, were the instructions given. From these it appeared that the defendant placed its defense on two grounds only, one of which was that the accident in which the plaintiff claimed to have been injured, resulted from a violation by him of the rules of the Armour Packing Company, in whose service he was at the time, and the other was that he was not injured at all. From aught that appears of the report in that case, the defense of want of notice was raised for the first time in the Court of Appeals. The court held that the defense was waived. In its opinion the court says: "In McComas v. Ins. Co., 56 Mo. 573, it was ruled that in a suit on a policy of life insurance when the company

in its defense denies all responsibility and refuses to pay anything, such defense amounts to a waiver of notice and proof of death.'' So this court in that case did say, but that language must be understood as referring to the facts of the case. It does not appear from the report of that case, that the defendant made any defense in the trial court on that ground and the point only arose incidentally in the appellate court. The trial court had instructed the jury that plaintiff was entitled to interest on the amount of the insurance from a certain date; the defendant made the point in the appellate court that interest should run only from the date the money was due, which by the terms of the policy was sixty days after the notice and proof of loss. The court ruled that as the defense had been made on the ground that the deceased had committed suicide (which was a cause of death the policy did not cover) the plaintiff was entitled to interest beginning sixty days after the death of her husband. That is as far as the McComas case goes in support of the waiver theory.

In Rippstein v. Ins. Co., 57 Mo. 86, we gather from the report that the proofs of loss were furnished the company, but it refused to pay on the ground that the death occurred from a cause excepted from the insurance. The answer put the defense on two grounds, one that the loss was not covered by the policy, the other that in making the proofs of loss the plaintiff did not comply with the forms prescribed by the terms of the policy. The court said that the defendant had made no objection to the form of the proofs as furnished, but refused to pay on other grounds and it thereby waived its right to object to the character of the proofs at the trial.

In Tayloe v. Ins. Co., 50 U. S. (9 How.) 390, negotiations for the insurance were conducted through letter correspondence. The fire occurred before a policy was delivered, and after it occurred the company refused to issue a policy and the question was, had the negotia-

tions at the time of the fire reached the stage when they amounted to a contract of insurance? the company contending they did not. The defense was, there was no contract of insurance, and besides there had been no notice and proof of loss as policies issued by the company required. The court held that proof of loss that would have been called for by a policy if one had been issued, was no defense in the case when none was issued. Any language in the opinion that may seem to sustain the appellant's view on this point, must be understood as intended to apply to the facts of that case.

Norwich, etc., v. Ins. Co., 34 Conn. 561, is relied on by appellant and is cited in the Crenshaw case (71 Mo. App. above referred to). That was a suit on a fire insurance policy on a steamboat. As soon as the loss occurred the owners gave written notice to the insurer who investigated it and notified the owners that it refused to pay on the ground that it was a marine and not a fire loss. The court said: "The motion also finds, in strict accordance with the fact, that this was all done before the time within which the plaintiffs, by the terms of the policy, were bound to present the formal proofs had expired. The court charged the jury that this denial of all liability whatever by the defendants was, in judgment of law, a waiver of any further proofs of loss. On this point the authorities are unanimous and decisive, and fully maintain the rule laid down by the court."

In Thwing v. Ins. Co., 111 Mass. l. c. 110, the court uses this language: "When an insurer, with knowledge of a claim made under a policy, rests his defense exclusively on other grounds, he is deemed to have waived all objections to the seasonableness and sufficiency of the notice and proofs of loss." That language was used concerning the application of an insurer who was seeking the aid of a court of equity to relieve him of the effects of a judgment at law in which he had submitted his case to the jury on an agreed statement and had lost. The court held that, having submitted his case for

the verdict of the jury on issues agreed upon and not including the question of lack of notice and proofs of loss in the agreed statement, he waived the defense.

Equitable Life Ins. Co. v. Hiett, 19 U. S. App. 173, is also cited and language used in the opinion is quoted as sustaining appellant's theory. In that case this language is used: "It is invariably held that a refusal by an insurer to pay a claim after a loss has occurred, because of a breach of any of the substantive provisions of the policy, is in itself a waiver of the provision requiring notice and proofs of loss to be submitted within a specified number of days after the loss occurs. The cases to this effect are almost too numerous for citation, and only a few will be referred to." Then the court refers to Tayloe v. Ins. Co.; Norwich, etc., v. Ins. Co., and Thwing v. Ins. Co., which we have above analyzed. The citing of those cases as supporting the principle there announced shows that the learned judge intended by what he said to confine the language used to a case falling within the principles declared in those cases and to the facts of the case he was then deciding. Now, what were the facts in that case? The company had issued a policy to Hiett under a contract in which it was agreed that Hiett would waive the benefit of the Missouri statute in reference to non-forfeiture for non-payment of premiums, and the policy should be forfeited if the premiums were not paid as therein agreed. Hiett had paid the annual premiums to keep the policy in full force up to April 5, 1889, but failed to pay the premium due on that date; the company by a resolution of date May 31, 1889, declared the policy forfeited for non-payment of the premium due April 5, 1889, and it was so entered on the company's books. Hiett died August 13, 1890. The administrator found among Hiett's papers a notice given by the company to him before April 5, 1889, that his premium was due at that date, and unless it was then paid the policy would be forfeited. The administrator not finding any receipt

for that premium relied on the statement contained in
the notice, concluded the policy was forfeited, and for
that reason did not send to the company proofs of loss.
In December, 1890, however, the administrator was ad-
vised that under the law of Missouri the policy was not
forfeited, but was carried by force of the statute as tem-
porary insurance to a date beyond that of the death of
the insured. Then the administrator applied to the
company for blanks on which to make out the proofs of
loss and the company refused on the ground that the
policy was forfeited; but in a letter by its at-
torneys to the attorneys of the administrator,
stated that the question of the validity of a
similar clause in the contract by which Hiett
essayed to waive the provisions of the statute was then
pending in a suit before the Supreme Court of the
United States and a decision was soon expected, ''and
that the decision thereof will be conclusive of the claim
made by you.'' The decision in the case referred to in
the letter was rendered in May, 1891, and was adverse
to the insurance company. Then the correspondence
between the attorneys was resumed, in which the attor-
neys for the company stated that they had advised the
company to furnish blanks for the proofs of loss and
concluded by saying: ''Upon receipt of your proofs
I do not doubt they will promptly act in the matter.''
But the company at last refused to furnish the blanks,
and when the suit followed the only defense made was
that proofs of loss had not been furnished as the policy
required. The point decided in that case was that evi-
dence of those facts was sufficient on which to submit
to the jury the question of whether the defendant had
intended to waive the requirement in the policy as to
proofs of loss. There we see that the company repudi-
ated the liability, not only before the period for making
proofs had elapsed, but before the death of the insured
had notified him that it would do so, and had so entered
it on its books. What Judge THAYER said in that case
was in reference to those facts.

We are referred also to some New York cases.    In *Prentice v. Ins. Co.*, 77 N. Y. l. c. 489, the court said: "It is now understood to be the doctrine of this court that no new consideration is required to support a waiver by an insurance company of a condition in respect to the time of serving proofs of loss, and that it may be done by acts or conduct occurring subsequent to the breach of the condition indicating an intention to waive such condition, although there is no consideration, and although there may be no technical estoppel."

Without pausing to investigate the soundness of the proposition that the insurance company may be held as obligated by a waiver of a valuable right when there is neither a consideration to support it as a contract, nor an element of estoppel in it, it is sufficient for our present purpose to see what the facts of the case were in which the court used that language.    The case there was a life insurance policy which had been assigned to a third party with the consent of the company. The policy required immediate notice of the death of the insured and full proofs to be furnished within twelve months "or all claims will be forfeited."    The insured was dead two years before the assignee of the policy heard of it, and in those two years he had paid the premiums, on receipt of notices which the company sent him, he and the company supposing the man was still alive.    Immediately after hearing of the death of the insured the holder of the policy notified the company and requested blanks for making out proofs of loss, which blanks the company furnished, the proofs were made in due form, and delivered to the company, who received them without objection and retained them three months, then refused to pay on the sole ground that proofs had not been furnished within the time prescribed, but made no offer to return the premiums for the two years paid under mistake.    The court held that the defendant had waived the right to declare the forfeiture

on that ground.    It was in reference to those facts that the court used the language quoted.

Brink v. Fire Ins. Co., 80 N. Y. 108, was a suit on a fire policy, which required proof of loss to be furnished as soon after the fire as possible.    The circumstances of the case rendered some delay unavoidable, but the proofs were furnished within what the court concluded was a reasonable time under the conditions.    The company received the proofs, retained them, examined the plaintiff in respect to them, and then decided not to pay on the ground of fraud, and so notified the plaintiff.    The court held that the defendant was estopped from claiming a forfeiture, saying: "Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire fairness and frankness. They may refuse to pay without specifying any ground, and insist upon any available ground, but if they plant themselves upon any specified defense, and so notify the assured, they should not be permitted to retract after the latter has acted upon their position as announced, and incurred expenses in consequence of it."

The same court afterwards in Devens v. Ins. Co., 83 N. Y. 168, l. c. 173, referred to the Brink case and said: "The doctrine of waiver was, we think, properly applied in that case, but it should not be extended so as to deprive a party of his defense, merely because he negligently, or incautiously, when a claim is first presented, while denying his liability, omits to disclose the ground of his defense, or states another ground than that upon which he finally relies.    There must, in addition, be evidence from which the jury would be justified in finding that with full knowledge of the facts there was an intention to abandon, or not to insist upon the particular defense relied upon, or that it was purposely concealed under circumstances calculated to, and which actually did, mislead the other party to his injury."

And later the same court in Armstrong v. Ins. Co.,

130 N. Y. 560, discussing the same subject and referring to its former decisions above quoted, said, l. c. 565: "While the later decisions all hold that such waiver need not be based upon a technical estoppel, in all the cases where this question is presented, where there has been no express waiver, the fact is recognized that there exist the elements of an estoppel."

The language used in the Nebraska cases cited go farther in the direction of appellant's position than any others to which our attention has been called; but when we interpret that language, as we must, in the light of the facts of the cases to which it applies, it falls short of saying that where an insurance company, speaking for the first time on the subject in its answer to the plaintiff's petition says, *actio non,* because the insured died of a cause not covered by the policy and besides the plaintiff failed to give the notice which the policy required, the company by that plea intends to say, or must be construed as intending thereby to say, that it waives the right to defend on that ground. In Omaha Fire Ins. Co. v. Dierks, 43 Neb. 473, l. c. 483, the court says: "All the authorities agree that the provisions of an insurance policy requiring the insured to give notice of the destruction of the insured property and to furnish the insurer proof of loss, may be waived by the conduct of the insurer; and in this case we think that the insurance company, by placing its defense to this action on the ground that the policy sued upon was not in force at the time of the destruction of the property, waived the provision of the policy which required the insured to give it notice of the loss, and made that issue in this case wholly immaterial." The court does not intend by what it there says to announce any new or advanced doctrine or to make a precedent; on the contrary it says that the principle it announces is one in which "all the authorities agree," and among the numerous cases referred to as announcing the same doctrine is Phillips v. Ins. Co., 14 Mo. 221. The Nebraska

court was dealing with a case in which the plaintiffs in their petition had stated that they had given the notice required; the answer of the defendant is not copied in full in the opinion, and therefore we may be excused if we mistake its purport, but we gather from what is said of it that it denied all the allegations of the petition, and advanced the affirmative plea that the plaintiffs in violation of the terms of the policy had placed a mortgage on the property insured. The court said that the evidence showed that whilst the plaintiffs themselves had not given the defendant notice, yet the defendant had actual knowledge of the fire through its agent who was himself at the fire and who gave immediate notice of it to the defendant. Then the court goes on to judge the answer of the defendant under the rules of pleading, and says: "This defense set up in the answer of the insurance company was, in effect, a plea of confession and avoidance. It in effect admitted the execution and delivery of the policy, the receipt of the premium, the destruction of the insured property by fire, and the receipt by it of notice of the fire. This defense that the policy was not in force at the time the loss occurred is utterly inconsistent with the defense of want of notice of the loss." Thus we see that the court after finding that the defendant had actual notice of the fire, disposes of the case on an interpretation of the pleadings, and under that interpretation it holds that not only was the fact of notice admitted, but all the other affirmative statements in the petition were likewise admitted, and the case was reduced alone to the question of the mortgage. We infer, therefore, that under the rules of pleading in that State, if a plaintiff sues an insurance company alleging in his petition that the defendant issued the fire policy, that the goods were destroyed by fire and other allegations necessary to make out his case, and if the truth was that the defendant had not issued the policy and that the goods had not been destroyed by fire, and besides that that after

Dezell v. Fidelity & Casualty Co.

the date of the alleged issuance of the policy the plaintiff had put a mortgage on the property, the defendant could not, after denying the allegations of the petition, plead affirmatively that the plaintiff had mortgaged the property without being thereby adjudged to have confessed that it issued the policy and that the goods were destroyed by fire. We have no doubt the Nebraska court correctly construed its own statute, but the rules of pleading are not entirely uniform in all the States, not so even in those States having codes of civil procedure of the same general nature. Under our system a defendant in his answer may avail himself of as many defenses as he may have, provided they be not inconsistent, that is, provided the proof of one does not disprove another, and even when he pleads inconsistent defenses, neither his adversary nor the court can choose for him which he will abandon; he is entitled to make the election. There are no rules of pleading applicable to an insurance company not applicable to other defendants. Under the rule of pleading in this State in the case just supposed, the defendant would be allowed the benefit of both of its denials and its affirmative defense. If a life insurance company is sued in Missouri on a policy alleged to have been issued by it, and if it is true that the company did not issue the policy, and true that the man died of a cause not covered by the alleged policy and true that the notice and proof of loss required by the supposed policy were not given, there is nothing in our code of civil procedure relating to pleading that forbids the company in such case availing itself of all three of those defenses.

We have devoted so much space to this Nebraska case because the learned counsel for appellant rely with earnestness upon it. To the same effect is the later case in that court. [Omaha F. Ins. Co. v. Hildebrand, 54 Neb. 306.] In that case there seems to have been a general denial and a plea that the insured property was vacant and unoccupied at the time it was de-

stroyed, and the court said that that plea "rendered it unnecessary for the insured to prove the allegation of her petition that prior to the bringing of the suit she had furnished the insurer with proof of loss."

The foregoing are not all the cases which the learning and industry of counsel have enabled them to bring to our assistance, but they are the ones chiefly relied on for the proposition of appellant, and they give more countenance to it than any others to which our attention has been called. After a careful study of those cases we are convinced that it was not the intention of the courts to say more than that if the insurance company before the time for furnishing proof of loss expired denied its liability and let the policy-holder know that it had resolved not to pay the claim, the latter was excused from offering the proofs; and that if after that time the company did anything in its dealing with the insured which showed an intention on its part to waive the defense of failure of notice and preliminary proofs, it will be adjudged to have done so. The last New York case above cited (Armstrong v. Ins. Co., 130 N. Y. 560), after reviewing a large number of cases, reached the conclusion that the insurance company was neither estopped to deny that the proofs were furnished, nor to be adjudged as having waived that defense by pleading its non-liability under the terms of the policy. The court said, l. c. p. 567: "It needs no argument to show that it was justified in standing upon its legal rights and asserting them in the ordinary way and at the proper time, so long as in doing so it did not mislead the plaintiff to his own harm. It had the right to base its defense to any claim made upon it upon the violation prior to the fire of any provision of the contract, and to require performance by the assured after the fire of those conditions which he had contracted to perform and which were essential to his cause of action and preliminary to the assertion of any claim upon the policy. And in demanding strict com-

pliance with such condition it did not waive any of its rights under the contract.'' We think that correctly expresses the law, and if, therefore, in the case at bar, the failure to give notice and make proofs was fatal to the plaintiff's right of recovery, the defendant would not have waived that defense by pleading, if it had so pleaded, facts showing that the insured died of a cause not covered by the policy, and had also asserted in the same answer the defense of failure of the plaintiff to give the notice or make the proofs.

## II.

This conclusion brings us back to a re-examination of the defendant's answer in this case which thus far we have treated as if it contained statements of facts going to show that the insured died of a cause not covered by the policy; we have treated it in that light because counsel on both sides have so treated it, and because it is only in that light that the questions of estoppel and waiver, as above discussed, have any application. But that is not our judgment of this answer.

The answer admits the issuance of the policy, that it was in full force at the date of the death of the insured and then ''denies each and every other allegation in said petition not hereinafter specifically admitted.'' That denial amounts to nothing. It is neither the general nor the special denial which our statute calls for. [Long v. Long, 79 Mo. 644; Snyder v. Free, 114 Mo. 360; Young v. Schofield, 132 Mo. 650; Boles v. Bennington, 136 Mo. 522.] The defense, therefore, rests upon what follows after that in the answer, which is that the insured ''did not die of any bodily injuries sustained through any external, violent or accidental means, but upon the contrary, died from the result of a medicine commonly called morphine, intentionally and knowingly taken by said deceased without expecting or intending the same should produce death.''

The first part of that sentence expresses a mere conclusion; the latter part states the fact from which the conclusion is drawn. The sentence taken as a whole means that in the opinion of the pleader death caused in the manner there stated is not an accidental death within the meaning of the policy. The answer states the facts substantially as the petition states them, but from the same facts draws a different conclusion. The court will take the facts as stated, but will draw its own conclusion.

In the first paragraph of the opinion in this case delivered in Division One, in which we all concur, Judge MARSHALL shows, by reason and authority, that death caused in the manner stated in the pleadings is the result of "external, violent and accidental means" within the meaning of the policy.

The only purpose of the notice called for by the policy was to put the defendant on the inquiry. But when the defendant comes into court and shows by its answer that it knows as much about the facts as the plaintiff does and agrees with the plaintiff as to the facts, we are bound to conclusively presume that it had notice in due time. This presumption is not as a finding of the fact from the evidence which is the province of the jury, but as a judgment upon the answer which is the province of the court.

In all the cases above discussed in which the terms of the policies in regard to the notice and proofs of loss are given, it is stipulated that the failure to give such notice and furnish such proof should operate as a forfeiture of all claims under the policy. But in the case at bar there is no such penalty specified in the policy and none such is pleaded. The answer goes as far as the policy justifies the pleader in going, which is to state that the policy was issued on the express condition that immediate notice of the death should be given and proofs furnished as soon as the circumstances of the case permitted, and that the plaintiff had wholly

failed to comply with that condition. In discussing a similar clause in a policy, the Supreme Court of Nebraska has said: "There is no forfeiture expressly provided for, and we are not authorized to supply one by construction." [N. Assurance Co. v. Hanna, 60 Neb. 29, 82 N. W. 97, citing Rheims v. Ins. Co., 39 W. Va. 672; Tubbs v. Ins. Co., 84 Mich. 646; Steele v. Ins. Co., 93 Mich. 81, which are to the same effect.]

In 13 Am. and Eng. Ency. of Law (2 Ed.), p. 329, it is said: "And if no forfeiture is provided for in case of failure to furnish proof, forfeitures being stipulated in case of breach of other requirements, or furnishing of the proofs in the specified time is not expressly made a condition precedent to recovery, the great majority of recent decisions hold that the effect of the failure to furnish them is merely to postpone the time of payment to the specified time after they are furnished." And the same law-writer goes on to say that if no time is specified or if the notice is required to be given and the proofs furnished immediately, it means within a reasonable time with due diligence. [Id., p. 330.]

Thus it appears that the courts draw a distinction between policies which call for the notice of death and proofs of loss, and stipulate that a failure to give such notice or furnish such proof shall work a forfeiture of the insurance, and policies which call for such notice and proofs but make no stipulation as to the consequence of failure to comply with such call. And whilst the courts are powerless to strike out the forfeiture feature in those contracts in which the parties have seen fit to insert it, they are equally powerless to insert such a feature when the parties have not seen fit to do so.

Where no forfeiture is prescribed in the contract the court should have regard to the consequence that results from the failure to give the notice as shown by the facts in the case, and if it appears that the purpose for which the notice and proofs were required has

really been accomplished the plaintiffs should not be precluded. In the first Nebraska case above referred to, that court with reason and justice said that the failure of the plaintiff to give the notice was immaterial "since it appears that the company had actual knowledge of the loss through its agents and acted on that knowledge." That was the case where the agent of the company was present at the fire and made a report of it, though the plaintiff failed to do so.

In the case at bar the defendant by its answer shows that the purpose for which the notice was required has been accomplished, and as it was not stipulated in the contract that a forfeiture should result from a failure to give the notice, the failure in that respect was immaterial, and it furnishes no defense to the plaintiff's suit. The plaintiff's cause of action being otherwise admitted, the motion for a judgment notwithstanding the verdict should have been sustained.

The judgment is, therefore, reversed and the cause remanded to the circuit court with directions to sustain the plaintiff's motion for a judgment notwithstanding the verdict and enter judgment accordingly. *Brace, Gantt* and *Fox, JJ.,* concur; *Robinson, C. J.,* concurs in paragraph I of this opinion, and dissents from paragraph II; *Marshall* and *Burgess, JJ.,* dissent from paragraph I, and concur in paragraph II and in the result.

### Separate Opinion.

MARSHALL, J.—This is a suit upon an accident policy for five thousand dollars. James Dezell was the insured, and the plaintiff, his wife, the beneficiary. He died on September 28, 1896, while the policy was in full force, from the effects of an overdose of morphine taken upon the prescription of a doctor, to relieve the pain of neuralgia. There was no intention to commit suicide. The answer admits the issuance of the policy and that it was in force at the time of the death, and

avers that it was issued to indemnify the insured "against bodily injuries sustained through external, violent and accidental means," etc., and that by its express terms it was provided, "This insurance does not cover disappearance nor war risk, nor voluntary exposure to unnecessary danger, nor injuries fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled," and then avers that the insured did not die of any bodily injuries sustained through any external, violent or accidental means, but upon the contrary, died from the result of a medicine commonly called morphine, intentionally and knowingly taken by said deceased without expecting or intending the same should produce death. The answer further pleads that the policy provided: "Immediate written notice of accident must be given to the company. Affirmative proof of loss must be furnished as soon as the nature and extent of the same can be determined," and then pleads that no such notice or proof was ever made. The reply is a general denial.

Upon the trial the plaintiff proved that the insured was not addicted to the use of morphine, and had only taken it two or three times in his life, under the advice of a doctor, to allay the pain of neuralgia. That on Saturday and Sunday before his death he was suffering with neuralgia, and that on Sunday evening he had the prescription for neuralgia which his physician had given, refilled, and then took the medicine and went to bed. About midnight his wife went to his room to inquire about him and he said he felt some better and told her to go to bed, which she did. About seven o'clock on Monday morning she went to his room again and found him unconscious, and he died about eleven o'clock on Monday morning. The doctor testified that he died from the effects of morphine. The plaintiff also introduced evidence tending to show that after the death this policy, with three life policies, were found

Dezell v. Fidelity & Casualty Co.

among the insured's papers in the bank, and that the plaintiff's attorney wrote to all of the companies, notifying them of the death and asking for proper forms upon which to make out proofs of loss; that all the other companies paid, but that no answer was made by the defendant. The defendant introduced evidence tending to show that no notice or proof of loss was ever received by it, and that it never knew of the loss until the institution of the suit, which was about three years and a half after the death. This last, however, must be a mistake, for the policy was issued only for a year from March 24, 1891, and was kept alive only by the payment of an annual premium of twenty-one dollars, and it nowhere appears, and manifestly could not be the fact, that any such premium was paid after the death, which occurred on September 28, 1896, and therefore the company must have known that there had been a loss, or, at any rate, that no annual premium was paid on March 24, 1897, or thereafter.

The defendant asked a peremptory instruction, which the court refused, and the case went to the jury upon two instructions asked by the plaintiff to the effect that if the death occurred from morphine taken to allay the pain of neuralgia, without any intention of committing suicide, and if the plaintiff gave immediate written notice of loss by a letter written by her attorney to the defendant, and mailed to it in New York, with a request for blank forms upon which to make proofs of loss, and if the defendant ignored the letter, the verdict should be for the plaintiff. The jury found for the defendant. In due time, the plaintiff filed motions for new trial and in arrest, and also a motion for judgment *non obstante,* upon the ground that the plaintiff was entitled to a judgment as a matter of law, because the death was for a cause covered by the policy, and because by denying in its answer all liability under the policy and claiming that the policy did not cover a death under the circumstances stated, the defendant

was precluded from pleading or showing that no no-
tice or proof of loss had been given, and by so pleading
it had waived the right to plead and prove that no no-
tice and proof of loss had been given or made.   The
court overruled all of said motions, and in so doing,
entered the following order:

"Now on this day the court doth take up the plain-
tiff's motion for a new trial, in arrest of judgment and
for judgment notwithstanding the verdict, filed herein,
and being duly advised in the premises doth overrule
the same for the reason that the defendant did not, in
the opinion of the court, as a matter of law, undertake
to insure against death by poison accidentally or other-
wise taken; that the undisputed evidence shows that
the deceased took an overdose of morphine, from the
effects of which he died and thus his death was due to
a cause not covered by the policy; that where as a mat-
ter of law plaintiff is not entitled to recover, as in this
case, a motion for a new trial will be overruled, not-
withstanding there may have been errors in the trial
of the case, that under other circumstances would re-
quire the motion for a new trial to be sustained, to
which actions and rulings of the court the plaintiff then
and there duly excepted."

In other words, the court held that it had erred in
giving the instructions asked by the plaintiff, and should
have given a peremptory instruction to the jury to find
for the defendant, because the policy did not cover a
death under the circumstances of this case.   After
proper steps, the plaintiff appealed.

## I.

The policy insured "against bodily injuries sus-
tained through external, violent and accidental means"
and provided that "this insurance does not cover   .
.   .   injuries fatal or otherwise, resulting from poison
or anything accidentally or otherwise taken, adminis-
tered, absorbed or inhaled," and the answer pleads that

the insured "did not die of any bodily injuries sustained through any external, violent or accidental means but, upon the contrary, died from the result of a medicine commonly called morphine intentionally and knowingly taken by said deceased without expecting or intending the same should produce death." And there is no controversy in the case that such was the fact, for the plaintiff proved it and the defendant admitted it in its answer and offered no testimony on the question. It is, therefore, purely a question of law whether the death resulted from a cause insured against.

The case of Renn v. Supreme Lodge K. of P., 83 Mo. App. 442, was an action on a fraternal beneficial certificate, which provided, *inter alia,* that it should be void if the death was caused or superinduced by drunkenness, or by the use of narcotics or opiates, and the answer pleaded that the death was caused or superinduced by the use of narcotics or opiates. The evidence showed that he died from an overdose of morphine; that some time before his death he had suffered a sunstroke, and had taken morphine, under the advice of a physician, to allay pain in the head, and that at and some time prior to his death he had a sore leg which gave him considerable pain and required the treatment of a physician; that he was confined to his bed for the five days preceding his death, and that the effect of morphine is to quiet pain and promote sleep; that a few hours before his death he was visited, at the house of his sister, where he was sick, by his fiancee, with whom he discussed and arranged for their marriage soon thereafter to take place. The Kansas City Court of Appeals, speaking through SMITH, P. J., said: "The point thus presented for our consideration is, whether or not the exception contained in the certificate already quoted includes a case where the assured is suffering from a physical ailment and takes morphine solely to lessen pain and in doing so unintentionally and accidentally takes an excessive quantity which causes his

death." After referring to the case of McGlother v. Ins. Co., 89 Fed. 685, where the assured, a doctor, had died from a poison unintentionally, voluntarily and unconsciously taken without knowing it was poison and believing it to be a harmless medicine which he had prescribed as a drink for his patients, and in which it was held there could be no recovery, the learned Judge said:

"In Ins. Co. v. Davey, 123 U. S. 739, where it is said that the insurer undertook to protect itself against the improper use in the future by the insured of alcoholic stimulants, and to that end it provided in the policy that if the assured should become so far intemperate as to impair his health or induce delirium tremens, the policy should become void, it was in effect declared that the excessive use of alcoholic stimulants by the insured if taken in good faith for medical purposes, or by medical advice, was not within the exception and would not avoid the policy. And, so it may, with equal propriety, be said that, where death, as here, is caused or superinduced by the intentional taking of a narcotic for medical purposes, or, which is the same thing, to lessen pain, or by the advice of a physician, it is not a death caused by narcotics within the exception contained in the policy sued on. It seems to us that this qualification is reasonable and fairly implied, and should be interpolated into the exception in order to give effect to what must have been the intention of the parties. It would, we think, be most unreasonable to suppose that by the introduction into the policy of the qualifying words 'if such death shall be caused or superinduced by the use of narcotics or opiates,' the parties thereby intended to prohibit the use by the assured of such narcotics under any and all conditions, or that if he should use narcotics under the advice of a physician or solely to lessen pain occasioned by a physical infirmity, if death should result therefrom he should thereby forfeit the indemnity provided in the certificate. Morphine is both an opiate and a narcotic which

is so extensively and beneficially used in the modern
practice of medicine and surgery for the alleviation of
pain and suffering in so many of the ills to which flesh
is heir, that it would not be reasonable to suppose that
any one of average intelligence would enter into a con-
tract of life insurance containing a stipulation provid-
ing, in effect, that if he use this valuable remedial agent,
either where prescribed for him by a physician or sur-
geon, or where he is suffering pain from a physical ail-
ment and death result therefrom, the indemnity pro-
vided shall be, in whole or in part, forfeited, unless his
intention to do so is manifested by the clear and unam-
biguous terms of the instrument. If the insurer had
intended to exempt himself from liability where death
results from the use of narcotics under the conditions
just referred to, it should have introduced into the ex-
ception terms clearly expressing such intention. In
view of the ruling made by the Supreme Court of the
United States in Ins. Co. v. Davey, supra, and of the
fact that the law disfavors the forfeiture of life insur-
ance policies of every kind, we feel authorized to inter-
polate into the exemption clause of the present certifi-
cate the qualification asserted in plaintiff's instruction.''

In Healey v. Mut. Acc. Ass'n., 133 Ill. 556, the peti-
tion alleged that the death was from an overdose of
chloral; the policy insured against death by external,
violent and accidental means, with an exception in case
of death from taking poison. There was a demurrer
to the petition which was overruled, and the plaintiff
held to be entitled to recover.

Omberg v. U. S. Mut. Acc. Co., 101 Ky. 303, was
an action on an accident policy insuring against death
from external, violent and accidental causes, with an
exception if the death was the result of poison in any
form or manner or from contact with any poisonous
substance. The death was caused by blood-poisoning
resulting from the bite of a mosquito, and it was held

Dezell v. Fidelity & Casualty Co.

that the death did not come within the exceptions noted, and the plaintiff was entitled to recover.

The Am. and Eng. Ency. of Law (2 Ed.), vol. 1, p. 294, says: "Accident policies usually restrict the liability of the insured to injuries effected through external, violent and accidental means. This provision is construed beneficially for the insured. The term 'external' refers to the means of the injury and not the injury itself, and the fact that an injury is accidental and unnatural imports an external and violent agency as its cause." The cases supporting the text are collated in the notes, and it is pointed out that the cases of Pollock v. Ins. Co., 102 Pa. St. 230, and Bayless v. Ins. Co., 14 Blatch. 144, which hold that death from accidental poisoning is not within the meaning of "external, violent, and accidental means," are opposed to the weight of authority.

In Barry v. U. S. Mut. Acc. Assn., 23 Fed. 712 (affirmed 131 U. S. 100), speaking of the meaning of external, violent and accidental means, the court instructed the jury as follows:

"There must be an external and visible sign of the injury, but it does not necessarily follow from that that the injury must be external. . . . Visible signs of injury, within the meaning of this policy, are not to be confined to broken limbs or bruises on the surface of the body. There may be other external indications or evidences of an injury. Complaint of pain is not a visible sign, because pain you can not see; complaint of internal soreness is not such a sign, for that you can not see; but, if the internal injury produces, for example, a pale and sickly look in the face, if it causes vomiting and retching, or bloody and unnatural discharges from the bowels; if, in short, it sends forth, to the observation of the eye, in the struggle of nature, any sign of injury—then those are external and visible signs, provided they are the direct result of the injury."

In Am. Acc. Co. v. Reigart, 94 Ky. 547, death was caused by a piece of beefsteak, which the insured was attempting to swallow, going into his windpipe and choking him to death in a few moments, and it was held to be within the meaning of the term, external, violent and accidental means.

The Am. and Eng. Ency. of Law (2 Ed.), vol. 1, p. 314, speaking of the exceptions usually specified in accident policies, says:

"The policy frequently exempts injury or death 'from taking poison.' The authorities are not in accord whether the exception extends to all cases of poison, whether accidental or intentional." And the cases of Hill v. Hartford Acc. Ins. Co., 22 Hun (N. Y.) 187; Pollock v. U. S. Mut. Acc. Assn., 102 Pa. St. 230; Cole v. Accident Ins. Co., 61 L. T. N. S. 227, and Bayless v. Ins. Co., 14 Blatch. 143, are cited as holding that no recovery is permissible, while Healy v. Mut. Acc. Assn., 113 Ill. 556, and Mut. Acc. Assn. v. Tuggle, 39 Ill. App. 509, are cited holding that a recovery can be had. The case of Renn v. K. of P., 83 Mo. App. 442, above quoted, is not referred to by the writer of the article in the encyclopaedia.

The case of Higbee v. Guardian Mut. Life Ins. Co., 66 Barb. 462, while not a perfect precedent, is yet valuable by analogy. It was a suit on a policy of life insurance. The insured died from an overdose of laudanum taken to cure a severe headache. The policy provided that it should be void if the insured did not make truthful answers to the questions propounded in the application, among which was "To what extent does the party use tobacco, ales or alcoholic stimulants?" To which he answered, "I never used tobacco in my life, or liquor in any form and I have never used opium." It appeared he had used laudanum on several occasions to relieve headache, and had also taken Dover's powders which contain opium. The court said:

"Upon the assumption that the insured guaranteed

the entire scientific accuracy of the oral statements made by him to the examining physician, we must ascertain the sense in which the inquiry was put, and what was intended and understood by the parties to the conversation. Tobacco, alcoholic stimulants and opium are all narcotic stimulants; each is occasionally resorted to as a remedy in disease, for the purpose of obtaining the benefit of the narcotic, or stimulating or other properties. Each is also used by numerous persons as a habit, when in health, and for purpose of obtaining the narcotic and stimulating effects of the drug when the person using it supposes himself to be in the ordinary and normal condition. The use first above described, where practiced habitually and to any considerable extent, is considered to be injurious to the health and system, and to have a tendency therefore to shorten life, while the proper administration of either, as a medical remedy, in case of disease, so far from being injurious and tending to shorten life, is used for the very opposite purpose, and is supposed to be curative in its effects. There can be no doubt in what sense this inquiry was intended, or as to which description of use was inquired for. . . . To hold that a policy would be avoided, where this usual and proper question had been answered negatively, by proof that the party had occasionally used alcoholic stimulants, or something in which opium was contained as a mere medical remedy, when suffering from some paroxysm of pain, would render those supposed securities, so much relied upon as provisions for widows, orphans and creditors, extremely illusory, on the principal of *noscitur a sociis.* [Harper v. Phoenix Ins. Co., 19 Mo. 506; Chattock v. Shawe, 1 Moody & Rob. 498.]''

This, then, is the result of the authorities bearing upon this proposition. The case is one of first impression in this court.

The policy insured ''against bodily injuries sus-

tained through external, violent and accidental means.''
The exception was ''this insurance does not cover  . .
.  injuries fatal or otherwise resulting from poison or
anything accidentally or otherwise taken, adminis-
tered, absorbed or inhaled.''

It will be observed that it is not limited to poison,
but extends to ''anything,'' and is not confined to poison
or anything taken, but includes poison or anything not
only taken, but also such as may be administered, ab-
sorbed or inhaled, and that it applies whether the same
be accidentally or intentionally done.

Literally construed, it would cover everything
known to man that would injure or kill, whether taken
by the assured himself, or administered to him by a
physician, or whether absorbed or inhaled without and
in spite of himself or with the aid of anyone else, or
as the result of natural laws.   It would also cut off a
recovery where the poison or anything was taken or
administered to save life and was given for the best
and most scientific reasons, as fully and completely
as if it was taken with suicidal intent.

If this was the true meaning and intent of the in-
surer, it ought to have been expressed in such unequi-
vocal and plain words that there could be no misun-
derstanding its meaning.   Instead of employing the
negative form of expression and clothing the intention
in such general terms, it should have been affirmatively
stated that the policy meant that no recovery could be
had, unless the physical evidences of the cause of the
injury were apparent to the naked eye, and that the
company would not pay for any injury unless the gap-
ing wound told its own tale.

The better reason supports the rule that such ex-
ceptions, in such policies do not cover medicine (even
though it contain poison) or anything taken or admin-
istered in good faith to alleviate physical pain, even
though it results in unexpected and unintentional death.

The plaintiff was therefore entitled to a verdict as

a matter of law, unless the defendant was entitled to rely upon want of notice and proof of loss. Under the evidence and instructions, the jury must have found for the defendant on the ground that no notice or proof of loss was given, for there was no other question of fact for the jury to find.

## II.

The plaintiff insists that by pleading that the company was not liable because death by poison exempted it from liability under the terms of the policy, the defendant waived, was estopped and disabled to plead the issue as to notice and proof of loss.

On the other hand, the defendant controverts this contention, and in addition claims that the plaintiff tried the case upon both issues, submitted both issues to the jury, took her chances of winning before the jury, lost, and therefore if it was error to take this issue into account, it was an error invited by the plaintiff and, hence, the plaintiff can not complain, and furthermore that that contention comes too late.

The error, if it be an error, was not invited by the plaintiff. The issue was raised by the defendant. The plaintiff, therefore, had two remedies open to her to meet the issue: first, to take the chance of defeating the defendant on the issue, as a question of fact before the jury, and if she lost, second, to defeat the defendant before the court as a matter of law by a motion in arrest or any known method of reaching the law question. Every defendant avails himself of the double method of defeating a plaintiff by taking issue and trying the facts before the jury, and if he loses, by filing a motion in arrest and contending that the petition is wholly bad in law, and the verdict based upon it is without support or authority of law. And the same is true of the plaintiff, as to the special defenses or answer of the defendant.

So the plaintiff has lost no right to have this question of law passed upon, because she took the chance of winning on the facts pleaded by the defendant.

It has already been pointed out that the answer consists of two special defenses, first, that the death was not caused by means within the terms of the policy but fell within the exception from liability, and, second, want of notice and proof of loss. The first special defense has been adjudged insufficient. If the defendant can not be allowed to plead the second defense because of the character of the first defense pleaded, then there was, as a matter of law, nothing for the jury to pass upon, but only a question of law for the court to settle, and therefore a false issue or rather a matter not properly in the case at all was submitted to the jury, and the verdict, therefore, rests upon no valid foundation in law and can not stand.

The defendant contends that a waiver of notice and proof of loss must occur before the expiration of the time limited for giving the notice and furnishing the proofs of loss, because a waiver implies that the company is estopped by its acts to plead want of notice, in consequence of throwing the plaintiff off his guard, when he would otherwise have given the notice before the time expired. On the other hand, the plaintiff contends that notice and proof of loss is for the benefit of the company and not for that of the assured, and this being so, the company can waive it at any time, either before or after the time limited for giving it, either expressly or by its acts and conduct or by the mode of pleading, just as any party litigant may do by uniting inconsistent and contradictory defenses in the same answer.

The Kansas City Court of Appeals in Bolan v. Fire Assn., 58 Mo. App. 225, held that the waiver must be before the time for giving the notice and proof of loss expired. But that same court, in Crenshaw v. Ins. Co., 71 Mo. App. l. c. 48, held that the right to defend

on the ground that no notice or proof of loss was given, was waived by the character of the other defenses interposed, that court very forcibly and persuasively disposing of the question as follows:

"The defendant next contends there was no compliance on the part of the plaintiff with that provision of the policy which provides that 'the company shall have immediate written notice with full particulars of any accident.' It does not appear from the evidence contained in the record that the plaintiff gave any such notice. But was this necessary to enable the plaintiff to maintain his action? We think not, for the reasons we shall now proceed to state.

"While it is true that this action was commenced before a justice of the peace where the defendant was not obliged to plead its defense by answer, yet the evidence and instructions sufficiently inform us of what was the nature of the defense relied upon by it. From this it appears that the defendant denied all liability to the plaintiff on two distinct grounds, one of which was that the accident which gave rise to the plaintiff's action on the policy resulted from the violation by him of the rules of the Armour Packing Company, a corporation in whose employ he was at the time of the happening of the same. And the other was that he was not injured at all. There was considerable evidence adduced having a tendency to both prove and disprove the first of these defenses, and to sustain the latter the defendant's general agent testified that twenty weeks after the accident plaintiff called at his office and informed him of the same; that plaintiff wanted him to advance the money on his claim. This the former declined to do, but stated to the latter that he would call up Dr. Jones, the defendant's examining physician and surgeon, ask him for the particulars of his case, which he accordingly did, and that the doctor replied that 'the man has no claim—he has never been injured.' The doctor himself testified for the defendant that he ex-

amined the plaintiff and that he had sustained no injury. The court, under appropriate instructions for defendant, submitted these two defenses to the jury. It is therefore clear that the defendant in its defense denied all responsibility.

"In McComas v. Ins. Co., 56 Mo. 573, it was ruled that in a suit on a policy of life insurance, where the company in its defense denies all responsibility and refuses to pay anything, such defense amounts to a waiver of notice and proof of death. And to the same effect are Equitable Life Society v. Hiett's Admrs., 19 U. S. App. 173; Norwich & New York Transportation Co. v. Ins. Co., 34 Conn. 561; Ins. Co. v. Coate, 14 Md. 285. The adjudged cases are all in accord to the effect that the refusal to recognize the existence of any claim or a refusal to pay, renders the delivery of notice and proofs of loss a needless ceremony, and is treated as a waiving of a strict compliance with the conditions as to a preliminary notice and proofs in respect to form and time. [LaForce v. Ins. Co., 43 Mo. App. 518, and authorities there cited.]

"In 19 U. S. App. supra, it was said that 'it is invariably held that a refusal by an insurer to pay a claim after a loss has occurred because of a breach of any of the substantial provisions of the policy, or because the policy was not in force, or because a loss has occurred in consequence of a risk not covered by the policy, is in itself a waiver of the provision requiring notice and proofs of loss to be submitted within a specified number of days after the loss occurs.' [Citing Tayloe v. Ins. Co., 9 How. 390; Norwich & N. Y. Transp. Co. v. Ins. Co., supra; Thwing v. Ins. Co., 111 Mass. 93, 110.] Accordingly we think that in view of the defenses interposed by the defendant, denying all responsibility, the court was warranted as a matter of law in declaring to the jury that the defendant had waived a compliance on the part of the plaintiff with the condi-

tion of the policy in respect to notice of the accident and the production of satisfactory proofs of disability.''

The St. Louis Court of Appeals in Fink v. Ins. Co., 60 Mo. App. 673, s. c., 66 Mo. App. 513, held that, ''Waiver may be made after the lapse of the stipulated time for the delivery of proofs of loss, and need not combine the elements of estoppel; the question of waiver is one of intention.''

The same rule obtains in the United States Court of Appeals, Equitable Life Society v. Winning, 58 Fed. l..c. 546, where it is said: ''It is invariably held that a refusal by an insurer to pay a claim, after a loss has occurred, because of a breach of any of the substantive provisions of the policy, or because the policy was not in force, or because the loss occurred in consequence of a risk not covered by the policy, is in itself a waiver of the provision requiring notice and proofs of loss to be submitted within a specified number of days after the loss occurs. The cases to this effect are almost too numerous for citation, and only a few will be referred to. Tayloe v. Ins. Co., 9 How. 391, 396, 397; Norwich & N. Y. Transp. Co. v. West Mass. Ins. Co., 34 Conn. 561, 570, and citations; Thwing v. Ins. Co., 111 Mass. 93, 110. In some of the more recent cases it has also been ruled that the provision in question may be waived by acts done by the insurer after the time has expired within which notice and proofs are required to be submitted, and that no new consideration is necessary to support a waiver of that character. In the case of Prentice v. Insurance Co., 77 N. Y. 483, 489, where the policy required notice of death to be forthwith given and full proofs to be submitted within twelve months, and no notice or proofs were submitted for more than two years after death occurred, ANDREWS, J., said, in affirming the judgment against the insurer: 'It is now understood to be the doctrine of this court that no new consideration is required to support a waiver by an insurance company of a condition in respect to the time

of serving proofs of loss, and that it may be done by acts or conduct occurring subsequently to the breach of the condition indicating an intention to waive such condition, although there is no new consideration, and although there may be no technical estoppel.'

"The same remark was repeated by CHURCH, C. J., in Brink v. Insurance Co., 80 N. Y. 108, 112, and it was further said that 'the filing of proofs of loss by a specified time is a condition made for the benefit of the company, which it may avail itself of or not; and if it determine to waive it, it can not afterwards recall the waiver, and insist upon the forfeiture.'

"In the case of Goodwin v. Insurance Co., 73 N. Y. 480, 496, the Court of Appeals of that State further declared that 'when an insurance company, by means of its officers or agents, in response to a claim for a loss, fails to say anything about the time of presenting the proofs after it has expired, but claims some other defense, the presumption is that it does not intend to interpose any other besides that named, and it is a fair inference to be derived from the fact that it was silent on the subject, that it designed to waive the violation of such condition.'

"We find nothing in other decisions from that State to which we have been referred (to-wit, Devens v. Insurance Co., 83 N. Y. 168, and Armstrong v. Insurance Co., 130 N. Y. 560, 29 N. E. 991) which works any sensible modification of the law of waiver in its application to such provisions of insurance policies as are now under consideration. It seems to be the well-settled doctrine in that State, as it is elsewhere, that an insurance company must promptly disclose its purpose, if it intends to rest its defense to a claim for insurance on the technical ground that notice and proofs of death were not submitted within the time specified in its policy. If it treats with the assured on other grounds, and asserts that the policy has become forfeited, or that other substantive conditions of the con-

tract have been broken, it must assume the risk of having its conduct in that behalf construed as a voluntary abandonment of other less meritorious defenses.''

The briefs of counsel contain references to cases pro and con decided elsewhere, and to the views of text-writers, but it would take a volume to review them, and even then they could not be harmonized.

It is, however, conceded by every one that such notice, being solely for the benefit of the company, can be waived. It can be expressly waived before or after the time for giving it has expired. It may be waived by the acts and conduct of the company, before the time expires for giving it. It may be waived by the company by failing to plead it as a matter of defense. It may be passed over *sub silentio* by the company at any time. If it be a waiver of notice for the company before the limited time expires, to refuse to pay because of a breach of any of the substantive provisions of the policy, why is it not also a waiver if the company when sued, comes into court and defends because of a breach of such substantive provisions? There can be no logical or valid distinction between the two.

Since writing the foregoing, this case has been re-argued, in Banc, and the defendant's principal contention is, that the whole question is a matter of *pleading* and not of waiver. That is, that the law is that a defendant may interpose as many defenses as he has, provided they are consistent, and that defenses are consistent so long as the proof of one will not necessarily disprove the other, and that the defenses pleaded in this case are consistent, because proof that the death was caused by a risk not insured against does not necessarily disprove the defense that no notice and proof of loss was given.

The defendant correctly states the rule of pleading, and if the first premise, to-wit, that the whole matter is a question of pleading, was true, the conclusion

drawn by the defendant would be irresistible and inevitable.

The infirmity underlying the contention, however, is, that it is not a matter of pleading at all. It is a matter of waiver. This is capable of mathematical demonstration. If it was simply a question of pleading, then the two pleas could be properly joined, whether the waiver of notice and proof of loss occurred *before* the expiration of the time limited for giving notice and proof of loss, or after the expiration of such time and before the institution of the suit, as well as after the institution of the suit.

For as a matter of pleading the two defenses would be just as consistent whether the waiver occurred at any one of the three specified stages of the proceedings.

Yet all authorities and all cases hold that if the waiver occurred before the expiration of the time limited for giving notice and proof of loss, the defendant may plead that no notice or proof of loss was given, but such a plea will be unavailing, because he has waived the right to defend on that ground by reason of denying all liability or by refusing to pay for any substantial reason.

So, too, the great weight of modern authority, and the rule adopted by both the Courts of Appeals in this State, is, that if the demand of payment is made after the expiration of the time for giving notice and proof of loss and before the institution of the suit, and if the defendant refuses to pay because of a substantive reason, such refusal is a waiver of notice and proof of loss. The defendant may plead both the substantive reason and the failure to give notice and proof of loss, but such a plea will be unavailing as to notice and proof of loss because he has waived notice and proof of loss.

These two propositions being true, it demonstrates the proposition that it is not a matter of pleading at all, but a question of waiver.

And if a waiver may occur by the defendant refusing to pay for a substantive reason after the time for giving notice and proof of loss has expired and before the suit is brought, then it necessarily and logically follows that the time at which the waiver occurred is immaterial, and that it may occur *after* the suit is brought as well as before it is brought, or before the expiration of the time for giving notice and proof of loss.

For a waiver may be either express or implied, and the latter is just as good as the former. The defendant may waive notice and proof of loss by expressly alleging that it was not given but that the defendant waives that requirement of the policy. So, too, the defendant may waive notice and proof of loss by implication; that is, he may defend on a substantive ground, which is an implied waiver in law.

This is no new doctrine in this State. The case of McComas v. Insurance Co., 56 Mo. 573, was decided by this court at the March term, 1874. The pleadings are not set out in full nor is there a full statement of them. But it does appear from the report that the defendant defended on the grounds, first, that the plaintiff had no interest in the policy and therefore had no right to maintain the action; second, that the defendant was not liable at all because the insured committed suicide while sane (the plaintiff admitted that he committed suicide but claimed that he was insane when he did so); and, third, that the policy provided that it should be payable sixty days after due notice and proof of loss and that no notice or proof of loss had been given. As to the last this court said: "As the defendant denied all responsibility, and refused to pay anything, this amounted to a waiver of the notice and proof of death, and, therefore, the sum assured was due sixty days after the death of the plaintiff's husband."

In Equitable Life Assn. Soc. v. Winning, 58 Fed. 541, the sole defense interposed by the defendant was that notice and proof of loss was not given within ninety days after the death, as the policy required. It appeared that the insured died on August 13, 1890, and that nothing was done looking towards giving notice and proof of loss until December 18, 1890, when an agent of the plaintiff wrote to the defendant asking for blank forms of notice and proof of loss in order to make proof of the death. After much correspondence the defendant took the position that the policy was forfeited before the death by the failure to pay an annual premium due on April 5, 1889, and that the Missouri statute in reference to extended insurance did not apply because the insured waived the benefit of the statute. The United States Circuit Court of Appeals held that by denying all liability the defendant waived the right to defend for failure to give notice and proof of loss.

The case of Omaha Fire Ins. Co. v. Hildebrand, 54 Neb. 306, is so apposite that a full excerpt therefrom is permissible. The Supreme Court of that State states the case and its conclusion, as to the point here under discussion, as follows:

"The insurance company had insured against loss or damage by fire to the extent of $1,000 certain real estate belonging to Mrs. Hildebrand and occupied by her as a dwelling-house and hotel. She brought this suit on that insurance contract, making the insurance policy a part of her petition, and alleging that the insured property was wholly destroyed by fire January 13, 1895, while the policy was in force; that she furnished the insurer proofs of loss under the policy as required thereby, and that the insurance company had refused to pay the loss, or any part of it. The insurer by its answer admitted the execution and delivery of the policy sued on, the destruction of the insured property by fire January 13, 1895, denied all other allega-

tions of the petition, and interposed as an affirmative defense to the action that at the time of the fire the insured property was, and had for some time been, vacant and unoccupied, contrary to the provisions of the insurance contract. On the trial Mrs. Hildebrand did not prove that she had ever furnished the insurance company any 'proofs of loss' or proof of the destruction by fire of the insured property. The insurer, to sustain its defense that the property was vacant and unoccupied at the date of the fire, called as its only witness Mrs. Hildebrand, who testified positively that the insured property was at the date of the fire occupied by herself as a residence and for hotel purposes; or, in other words, Mrs. Hildebrand's testimony entirely disproved the defense interposed to the action by the insurer. The district court directed the jury to return a verdict in favor of the insured. This was correct. The provision of an insurance policy which requires the insured to furnish the insurer proofs of loss is one inserted in the policy for the benefit of the insurer to enable it to ascertain the cause of the fire and the extent of the damages, and it is a provision which the insurer may waive; and where it denies that the policy was in force at the time of the loss of the insured property, it will be conclusively presumed to have waived the furnishing to it of proofs of loss. If the policy was not in force at the date of the fire, the furnishing by the insured of proofs of loss would be an entirely useless proceeding. This waiver of furnishing proofs of loss may be made before suit is brought by the insurer's unconditional denial of its liability for the loss, or it may be waived after the suit is brought by interposing to the action a defense that the policy was not in force at the time of the loss. In Phoenix Ins. Co. v. Bachelder, 32 Neb. 490, it was held: 'The absolute denial by the insurer of all liability, on the ground that the policy was not in force at the time of the loss, is a waiver of the preliminary proofs of loss required by the policy.' To the same

effect are St. Paul Fire & Marine Ins. Co. v. Gotthelf, 35 Neb. 351; Western Home Ins. Co. v. Richardson, 40 Neb. 1; Omaha Fire Ins. Co. v. Dierks, 43 Neb. 473, 569; Dwelling-House Ins. Co. v. Brewster, 43 Neb. 528; German Ins. & Savings Institution v. Kline, 44 Neb. 395; Home Fire Ins. Co. v. Hammang, 44 Neb. 566; Rochester Loan & Banking Co. v. Liberty Ins. Co., 44 Neb. 537; Aetna Ins. Co. v. Simmons, 49 Neb. 811; Home Fire Ins. Co. v. Fallon, 45 Neb. 554. The defense interposed by the insurer that the policy was not in force at the time of the fire because the insured property was vacant and unoccupied, contrary to the provisions of the policy, rendered it unnecessary for the insured to prove the allegation of her petition that prior to the bringing of the suit she had furnished the insurer with proofs of loss."

In McBryde v. Ins. Co., 55 S. Car. 589, the assured furnished proof of loss but did not accompany it with a certificate of the nearest magistrate as to its correctness, as the policy required. For this reason, *inter alia*, the trial court nonsuited the plaintiff. The Supreme Court reversed the judgment of the trial court, and, after holding that as the company did not object to the proof of loss because it was not accompanied by the certificate of the magistrate, at the time it was served, it could not be heard to raise such an objection afterwards, said: "Furthermore, the defendant by contesting the case on the merits waived the right to object to the proofs of loss."

But it is said in this case that the defendant objected that no proof of loss had been made, at the very first moment it was called upon to speak or define its position, or that it was made aware that any claim was asserted against it, and, hence, it has never either expressly, or by acts or conduct, waived, or indicated any intention to waive, the proof of loss.

This is true. But it does not make the case any different from what it would have been if the demand

of payment had been made before the expiration of the time limited for making proof of loss, or after the expiration of the time limited for making proof of loss and before the suit was brought, and if upon such a demand, at either of said times, the defendant had refused to pay because the loss occurred from a risk not insured against and also because no proof of loss had been made. For in both of such instances there would have been no express waiver, and instead of an intention to waive proof of loss, there would be the express intention not to waive the proof of loss but to insist upon it. Yet in both such cases the defendant would be cut off from defending on the ground that no proof of loss had been made, because it defended upon the substantive ground that the loss did not occur from a risk assured against.

In cases where the demand is made before the expiration of the time limited for making proof of loss, and the refusal is based upon a substantive ground and also upon the ground that no proof of loss has been made, all the authorities hold that it is not necessary for the assured to make proof of loss, because to make proof of loss would be a perfectly idle thing to do, for the reason that even if properly made, the company would not pay. Therefore, the law says such a refusal amounts to a waiver of proof of loss. It is not exactly accurate perhaps to call it a waiver or an estoppel, either, but it is so called for the sake of brevity. Really it means that the law never requires an useless thing to be done. Hence, if the demand is made before the expiration of the time limited for making proof of loss, and the refusal is based upon a substantive ground and also because no proof of loss has been made, the law excuses the insured from making proof of loss, because it would do no one any good to make such proof. At first the courts put it upon the ground of estoppel, that is, that the company had thrown the insured off of

his guard and led him to believe proof of loss would not be required. But afterwards it was seen that this was not the true reason of the rule, for it could not be said that the company had led the insured to believe that it would not insist upon proof of loss, for the reason that it did insist upon proof of loss and did refuse to pay partly because no proof of loss had been made. Therefore the doctrine of estoppel had to be abandoned. Then the courts put it on the ground that a refusal for such a double reason amounted to a waiver. By this is really meant that it would have been perfectly useless for the assured to make proof of loss, for the company would not have paid if it had been made, and therefore the insured will not be required to do a perfectly useless and unnecessary thing.

If such demand and refusal for such double reason occurs before the expiration of the time limited for making proof of loss, it can not be said there was any inconsistency in the position taken by the company, and it can not be said that the assured had any right to assume or believe that the company would not insist upon proof of loss. Yet in all such cases it is held that a refusal to pay for a substantive reason dispenses with the necessity for making proof of loss.

In cases where the demand and the refusal for such double reason occurs after the expiration of the time limited for making proof of loss, it can not be said the company has taken inconsistent positions, nor that it has shown any intention to waive proof of loss. Yet in such cases it is held that a refusal to pay for a substantive reason, dispenses with the necessity for making proof of loss, because it would not have paid even if proof of loss had been made, and, therefore, it would have been an idle thing for the assured to have done to have made proof of loss.

If these two postulates are true, then the conclusion follows, as surely as the shadow follows the substance, that if the demand is made by a suit, and the refusal to

pay for a substantive reason and also because no proof of loss has been made, takes the shape and form of an answer, the law dispenses with proof of loss, not because the defendant is estopped to defend on that ground, not because the two reasons or grounds are inconsistent, not because the defendant has shown any intention to waive proof of loss (for in none of the three cases illustrated was there any such intention, but quite the reverse), but because the defendant has waived proof of loss, that is, it has demonstrated that if proof of loss had been made, it would have still refused to pay, and therefore it would have been a perfectly useless thing for the assured to have done; and hence the law dispenses with it.

It will be noted that in all three cases there was a refusal to pay because no proof of loss had been made, and, therefore, as here, the defendant set up this claim at the very first moment it was informed that any demand was asserted against it. There is, therefore, no possible difference between the defendant in this case and the company in either of the two cases illustrated.

The courts have, therefore, either been wholly and fundamentally wrong in everything that has been said or written as to waiver, either before the expiration of the time for making proof of loss, or after the expiration of such time and before the suit was begun, or else the same principle must apply if such demand and refusal for such double reason occurs by the institution of a suit and the interposition of such a double defense.

The underlying reason of the rule is that proof of loss is required solely by contract, and that it was inserted in the contract for the benefit of the company; that is, it was intended to give the company prompt notice of the loss, so that it could investigate and ascertain the cause of the death, and learn all the facts that might throw light upon the bona fides of the claim of the assured to the indemnity for which he had been paying. It was to enable the company to be put into a position

to ascertain the truth, before the evidences of the truth became buried or extinct. If, therefore, it appears at any time that the company had knowledge of the case so as to be able to defend on the ground that the loss occurred from a risk not insured against, it had all the information it could have obtained if proof of loss had been promptly made, and therefore it would be unconscionable to allow the company to avoid payment or evade liability for the failure of the assured to do a thing that would subserve no useful purpose and would have been an idle and meaningless ceremony.

But it is said such is the contract of the parties, and as they had a right to make such a contract, they must abide by it, and the courts are powerless to relieve them. If this be true, then how happens it.that the courts relieve them at all? By what right or logic can it be said that the courts can and will relieve the assured if the waiver occurs before the expiration of the time limited for making proof of loss? It is not because there is any express waiver or any intention to waive proof of loss, for the company refused to pay partly on the ground that no proof of loss had been made. If the contract is absolute and imperative, then the courts have no right to dispense with performance by both parties of all the conditions and terms of the contract. If it is a matter of contractual right, the courts have no power to imply a waiver, and, therefore, everything that has ever been written is wrong. For if it is a contractual right, the company has a right to insist upon it at all times, and it is then wholly immaterial at what time the company refused to pay because proof of loss had not been made, and equally immaterial that the company at the same time also refused to pay for a substantive reason. Either all the adjudicated cases are wrong, and the company has a right to refuse to pay for a substantive reason and also because no proof of loss has been made, or else a refusal to pay for a substantive reason, waives or dispenses with or makes wholly use-

less, proof of loss, and this is true no matter at what time or in what way the question arises, whether before the expiration of the time limited for making proof of loss, or after the expiration of such time and before suit is brought, or after the suit is brought. There is no middle ground and no room for differentiation. Consistency, logic, reason and common sense put the rights of the parties in the same boat under all circumstances.

And there is no hardship upon an insurance company to adopt the rule announced herein. For there is here no pretense that the company did not learn the truth about the death; there is no pretense of any fraud perpetrated upon the company, nor of any concealment of facts, nor yet that the company could have been put in any better position if proof of loss had been made. On the contrary, the company itself sets up the facts as to the death and then asserts as a matter of law that the policy did not cover such a risk. The plaintiff admits the facts and contests the defendant's claim as to the law. Therefore, the defendant is not damaged a particle by the failure to make proof of loss. The defendant would not have paid if proof of loss had been made. The defendant is clearly liable for the loss, and for it to keep all the premiums it collected as payment for this indemnity, and then to evade or avoid its just liability because the plaintiff did not do a thing that would have been perfectly useless, an idle ceremony and in this case a mere formal act, would be unconscionable and against good morals.

Without further elaboration, it results that by pleading that the death ensued from a cause not insured against, but from one of the causes excepted in the policy, the company waived the right to plead want of notice and proofs of loss. This being true, there was no fact for the jury to find. The whole case was one of law for the court. The plaintiff was entitled to raise these questions of law by a motion in arrest, as she did, and the trial court erred in overruling the

State ex rel. v. Evans.

motion, and in holding, when overruling that motion, that the plaintiff was not entitled to recover, as a matter of law.

For these reasons I think the judgment of the circuit court should be reversed and the cause remanded with directions to sustain the plaintiff's motion *non obstante* and to enter a judgment for the plaintiff for the amount specified in the policy with interest thereon from the date of the institution of this action.

All except *Robinson, C. J.,* concur as to the first paragraph, and all except *Robinson, C. J.,* also, concur as to the result reached herein, but do not otherwise agree to the reasoning employed in the second paragraph; *Burgess, J.,* concurs *in toto.*